Hamzeh **HAJIANI–NIROUMAND,**
Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 93–3072.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1994.

Decided June 9, 1994.

Clayton H. Brant of Lincoln, NE, for appellant.

David M. McConnell of the Office of Immigration Litigation, Dept. of Justice, Washington, DC, for appellee.

Before McMILLIAN, WOLLMAN and BEAM, Circuit Judges.

McMILLIAN, Circuit Judge.

Hamzeh Hajiani–Niroumand seeks review of a final order of the Board of Immigration Appeals (BIA) denying his applications for asylum and for withholding of deportation under Sections 208 and 243(h) of the Immigration and Nationality Act (INA), 8 U.S.C. §§ 1158(a), 1253(h) (1988), and petition for a waiver of deportation under § 212(c) of the INA, 8 U.S.C. § 1182(c).[1] *Matter of Hajiani–Niroumand,* No. A30–961–800 (B.I.A. May 20, 1993). Petitioner argues the BIA abused its discretion in determining that he failed to demonstrate sufficient countervailing equities in his favor which would have entitled him to a § 212(c) waiver of deportation. Petitioner also contends that the BIA abused its discretion in concluding that he failed to demonstrate that he had a well-founded fear of persecution, or that a clear probability existed that he would be persecuted, for his religious beliefs and political opinion, if deported to Iran. For the reasons discussed below, we deny the petition for review.

## I. BACKGROUND

Hajiani–Niroumand, a forty-four-year-old native and citizen of Iran, was legally admitted into the United States as a permanent resident in 1973 based upon his marriage to a United States citizen, Barbara Bourne. He has remained in the United States to this date. Petitioner and Bourne had one child, Gabriel, and were divorced in 1975. Petitioner has not seen Gabriel for many years, and Gabriel was adopted by Bourne's second husband.

While residing in the United States, petitioner received numerous state convictions, including three convictions for driving while intoxicated, petty larceny, passing bad checks, criminal trespass, and third degree assault. In 1978 petitioner was convicted for possession of marijuana and received four months probation. In 1986 petitioner was convicted on two counts of sexually assaulting two children under the age of fourteen

and sentenced to fifteen months to four years on each count to run concurrently.

After his convictions for possession of marijuana and sexual assault, the Immigration and Naturalization Service (INS) issued a show cause order charging petitioner with deportability under 8 U.S.C. § 1251(a)(4), (11). Section § 1251(a)(4) requires deportation of any alien who "is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more." Section § 1251(a)(11) requires deportation of any alien who is "convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana."

The immigration judge found that petitioner was not deportable under § 1251(a)(4) on the basis of his conviction for sexual assault on minors because, although for a crime of moral turpitude, his conviction occurred in 1986, more than five years after his entry in 1973, as required to sustain a charge of deportability under that provision. However, the immigration judge found petitioner deportable under § 1251(a)(11) because of his 1978 conviction for possession of marijuana.

At his deportation hearing petitioner filed an application for asylum and for withholding of deportation. Petitioner also filed an application for a § 212(c) waiver of deportation, contending that countervailing equities in his favor outweighed the adverse factors supporting deportation. The immigration judge denied the requested relief and the BIA affirmed. Petitioner appeals.

## II. DISCUSSION

■ Petitioner first argues that the BIA's denial of a § 212(c) waiver of deportation was an abuse of discretion. We review the BIA's decision to deny petitioner's application for § 212(c) relief for an abuse of discretion. *Varela–Blanco v. INS,* 18 F.3d 584, 587 (8th Cir.1994) *(Varela–Blanco )* (per curiam) (citing *Rodriguez–Rivera v. INS,* 993 F.2d 169,

---

1. The Immigration and Nationality Act was amended by the Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978; however, the 1990 Act does not apply retrospectively and does not apply to petitioner because he received his notice of deportation proceedings before March 1, 1991.

170 (8th Cir.1993) (*Rodriguez–Rivera*) (per curiam)). The BIA has abused its discretion if the decision is without rational explanation, departs from established policies, or invidiously discriminates against a particular race or group. *Rodriguez–Rivera*, 993 F.2d at 170. Petitioner claims the BIA abused its discretion by deviating from established BIA policies.

Section § 212(c) gives the Attorney General discretion to waive the inadmissibility of certain eligible aliens. 8 U.S.C. § 1182(c). In the present case, it is undisputed that petitioner was statutorily eligible for a § 212(c) waiver of deportation.[2] However, § 212(c) does not automatically provide a waiver for all those eligible. Rather, the grant of a § 212(c) waiver is within the BIA's discretion. *Varela–Blanco*, 18 F.3d at 586 (Attorney General delegated discretionary authority to director of INS) (citing *Cordoba–Chaves v. INS*, 946 F.2d 1244, 1247 (7th Cir.1991)); *Vargas v. United States Dep't of Immigration*, 831 F.2d 906, 908 (9th Cir. 1987).

■ In considering applications for waivers of deportation, the BIA has refused to adopt a rigid test, preferring instead to examine the individual merits of each case. The BIA must balance the social and humane factors presented by the alien against the adverse factors including the undesirability of the alien as a permanent resident. *Matter of Marin*, 16 I. & N. Dec. 581, 584–85 (B.I.A. 1978) (*Marin*); *see also Varela–Blanco*, 18 F.3d at 586 (citing *Espinoza v. INS*, 991 F.2d 1294, 1297 (7th Cir.1993)).

■ Among the factors to be weighed in an alien's favor when balancing the equities are: (1) the existence of family ties within the United States; (2) length of residence in the United States; (3) entry into this country at a young age; (4) hardship to the alien and family if deported; (5) history of employment; (6) service in this country's military; (7) property or business ties, (8) community service; (8) when there is a criminal record, proof of genuine rehabilitation; and (9) any other good character evidence. *See Matter of Buscemi*, 19 I. & N. Dec. 628, 633 (B.I.A. 1988) (*Buscemi*); *Varela–Blanco*, 18 F.3d at 586.

■ However, the BIA also considers negative factors including (1) the nature and circumstances of the crime giving rise to deportation; (2) additional significant immigration violations; (3) the existence, nature, recency, and seriousness of the petitioner's criminal record; and (4) any other negative character evidence. *See Marin*, 16 I. & N. Dec. at 584–85.

■ As the adverse factors grow more serious, the BIA may require the alien to present a heightened level of favorable considerations which show unusual or outstanding countervailing equities. *Id.; see Varela–Blanco*, 18 F.3d at 586. As stated above, petitioner has a serious, lengthy, criminal record, including a conviction for sexually assaulting two children under the age of fourteen, and a conviction for possession of marijuana. The BIA determined that the seriousness of petitioner's criminal record required that he demonstrate unusual or outstanding countervailing equities. Petitioner does not challenge this finding. Rather, petitioner argues the BIA abused its discretion in determining that the favorable evidence introduced failed to offset the adverse factors.

In examining petitioner's favorable factors, the BIA first considered the duration of his residence in the United States. The BIA observed that petitioner had lawfully resided in this country for twenty years. However, the BIA specifically found that, in those twenty years, petitioner had not developed significant ties to this country. The BIA noted that, although petitioner's sister resides in this country, he sees her infrequently. While petitioner's son resides in the United States, petitioner has had little, if any, contact with him for many years. Consequently, although a favorable factor, petitioner's lengthy duration of residency in the

---

**2.** To be statutorily eligible for relief under § 212(c), an alien must have seven years of unrelinquished domicile subsequent to a lawful admission. Petitioner has more than that necessary to qualify, having been admitted as a permanent resident of the United States in November 1973.

United States was not an unusual or outstanding equity.

The BIA also found that neither petitioner nor his family would suffer significant hardship if he were deported. There was no record of child support, petitioner does not pay financial support to his sister, and petitioner himself was unable to show that he could not adjust to life or provide for his needs in Iran. Further, there was no record of community service in this country, and petitioner has no significant property or business ties to the United States.

In the final part of its analysis, the BIA observed that petitioner had failed to demonstrate evidence of rehabilitation. In this regard, the BIA stated "we note that [petitioner] has a number of convictions for crimes of increasing severity and insofar as some involve mistreatment of defenseless children and individuals, we are unpersuaded that he is not a danger to society." Further, petitioner continued to deny guilt of sexually abusing those children and demonstrated no remorse. The BIA concluded that petitioner's "showing on this issue is not a positive one and is clearly insufficient, even when combined with the other factors in his case, to warrant a grant of the requested relief from deportation." The BIA therefore affirmed the immigration judge's determination and dismissed the appeal.

Specifically, petitioner contends that the BIA's finding that he failed to demonstrate unusual or outstanding countervailing equities inexplicably departed from the BIA's finding that outstanding countervailing equities existed under similar facts in *Buscemi*. Petitioner contends that his positive factors are comparable to or more significant than the outstanding countervailing equities found in *Buscemi*. In *Buscemi*, the alien was a twenty-six-year-old single male with no dependents. The BIA evaluated evidence demonstrating that Buscemi's immediate family resided in this country, that he had helped to support his family both financially and emotionally, that he had resided in this country for seventeen years, had immigrated at an early age, and had a history of gainful employment. Petitioner further argues that, although in *Buscemi* the BIA found that the adverse factors outweighed the outstanding countervailing equities in favor of Buscemi, the adverse factors present in the instant case are not as serious as those in *Buscemi*.[3] Thus, petitioner argues that, because his positive factors are equal to or better than the outstanding countervailing equities found in *Buscemi*, and his adverse factors less serious, he, unlike Buscemi, is entitled to a § 212(c) discretionary waiver of deportation.

The facts surrounding petitioner's application for a § 212(c) waiver greatly differ from those found in *Buscemi* and are sufficiently distinct to explain the disparate findings regarding the existence of outstanding countervailing equities found by the BIA in these two cases. Moreover, an application for § 212(c) relief is evaluated for abuse of discretion upon the merits of each individual case. *See Rodriguez–Rivera*, 993 F.2d at 170–71. We note that one of our sister circuits has rejected the precise argument raised here by petitioner. *See Bellido–Torres v. INS*, 992 F.2d 127, 130 (7th Cir. 1993) (§ 212(c) waiver is evaluated on case-by-case basis; regardless of similarities to *Buscemi*, BIA weighed evidence within *Marin* framework and concluded that alien had not shown unusual or outstanding equities; BIA's decision is not irrational, nor did it depart from established policy); *see also Gouveia v. INS*, 980 F.2d 814, 819 (1st Cir. 1992) (reviewing court does not have authority to determine the weight to be afforded each factor in the discretionary § 212(c) balancing).

It is not the role of this court to determine whether the BIA gave undue weight to petitioner's criminal record. "Our scope of review is limited to whether the discretion was actually exercised and whether it was exercised in an arbitrary or capricious manner." *Rodriguez–Rivera*, 993 F.2d at 170 (quoting

**3.** For example, petitioner argues that Buscemi was convicted of attempted sale of heroin, attempted robbery in which firearms were carried, and sexual assault with a dangerous weapon. In contrast to Buscemi's "serious offenses," petitioner argues that his drug offense was a minor, adverse factor, given that it happened long ago and did not involve a weapon, and that his sexual assault offenses were less serious than Buscemi's because they did not involve dangerous weapons.

*Garcia–Lopez v. INS,* 923 F.2d 72, 74 (7th Cir.1991)). We require only that the BIA render a decision that sets out its analysis sufficiently to enable us as a reviewing court to see that the BIA has heard, considered and decided, and not merely reacted. *Vergara–Molina v. INS,* 956 F.2d 682, 685 (7th Cir.1992) (quoting *Becerra–Jimenez v. INS,* 829 F.2d 996, 1000 (10th Cir.1987)). In the present case, the BIA has far surpassed this deferential standard by engaging in a detailed, well-reasoned analysis of all relevant factors employed by the *Marin* balancing test. The BIA carefully examined the plethora of negative factors that weighed against § 212(c) relief, including petitioner's long record of alcohol and drug abuse, commission of numerous crimes, the increasing severity of his criminal activities, and his failure to accept responsibility for his crimes. There are virtually no equities weighing in favor of granting § 212(c) relief: petitioner does not have significant family ties in the United States. Although he has a long residency in the United States, the BIA specifically considered the hardship he would face if deported to Iran and observed that he did not immigrate to the United States at a young age and would be able to support himself in Iran, and that he did not pay financial support to his sister or son. *See Ashby v. INS,* 961 F.2d 555, 557 (5th Cir. 1992) (BIA did not abuse discretion in denying § 212(c) relief to twenty-seven-year resident of United States given his criminal history and fact that no family members depended upon him for support). Petitioner also had no community service, property ownership or significant business ties, and showed no evidence of rehabilitation. We therefore reject petitioner's assertion that the BIA abused its discretion by denying a § 212(c) waiver.

■ Petitioner also contends the BIA abused its discretion in denying his request for religious and political asylum. In support of his applications for political asylum, petitioner, then age forty, testified at his deportation hearing that, when he was living in California after his arrival in this country, he belonged to a group consisting of six or seven members who met with Iranian refugees to discuss their opposition to the revolution led by Khomeini in Iran. Petitioner testified that he and his brother-in-law were once interviewed on television in Los Angeles, and they openly discussed their opposition to the Khomeini government. After this interview, petitioner testified that he received threatening phone calls and a rock was thrown through his window. According to petitioner, these events occurred between 1976 and 1978. However, after the immigration judge pointed out that the Khomeini government did not assume power until 1979, petitioner stated "I might have the dates mixed up."

Furthermore, petitioner stated on his asylum application that his aunt and uncle were arrested in Teheran in 1980. He stated that his uncle was executed. At the deportation hearing, petitioner testified that his aunt was released after three years imprisonment and is now "like a zombie." When asked whether any harm would come to him if deported to Iran, petitioner testified that "there will be no welcome party for me," and that there would be questioning and "they will try to get to the bottom of it."

In support of his claim for religious asylum, petitioner testified that he had converted to Christianity in 1975 and had become a Baptist. Petitioner's asylum application stated that he was a Catholic. Petitioner also testified that his family did not practice any religion in Iran. When asked what Christianity meant to him, petitioner could not articulate any tenets or principles of Christianity or any other specific religion.

■ The BIA has discretion to grant asylum to an alien who is a "refugee." 8 U.S.C. § 1158(a). A "refugee" is an alien who is unwilling to return home because of a well-founded fear of persecution on account of, among other things, his or her religious faith or political beliefs. *See* 8 U.S.C. § 1101(a)(42)(A) (1988) (defining "refugee"). In order to prove a well-founded fear of persecution, petitioner "must show the fear is both subjectively genuine and objectively reasonable." *Ghasemimehr v. INS,* 7 F.3d 1389 (8th Cir.1993) (*Ghasemimehr*) (per curiam).

■ The BIA's factual findings underlying its refusal to grant asylum, including whether the alien has proved a well-founded fear of persecution, are reviewed under the substantial evidence standard. *Behzadpour v. United States,* 946 F.2d 1351, 1353 (8th Cir.1991) (*Behzadpour*). Under this standard, this court must determine whether, based on the record considered as a whole, the BIA's decision was supported by reasonable, substantial, and probative evidence. *INS v. Elias–Zacarias,* — U.S. —, —, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992). Reversal of the BIA's finding that a petitioner failed to prove his or her well-founded fear of persecution is warranted only if the petitioner shows that the evidence was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution. *Id.* at — & n. 1, 112 S.Ct. at 815 & n. 1; *see also Alsheweikh v. INS,* 990 F.2d 1025, 1027 (8th Cir.1993).

We believe a reasonable factfinder could find petitioner lacked a well-founded fear of political and religious persecution. Petitioner's testimony about his Christian beliefs does not support a well-founded fear of religious persecution. The immigration judge found petitioner's testimony regarding his Christian faith to be "vague and equivocal." The immigration judge noted that petitioner had not joined or registered in any church, and that he had failed to provide any significant corroborative evidence of conversion to Christianity. Regarding petitioner's claim for political asylum, the immigration judge found petitioner's testimony regarding his anti-Khomeini activities to lack credibility. In affirming the immigration judge's determination, the BIA pointed out that the evidence fell far short of that required to establish a "well-founded fear" of persecution because his recount of his political activities was poor and inconsistent, and, even if the television interview occurred, there was no evidence that authorities in Iran were aware of it or would take action against him. Petitioner provided no corroborative evidence of his claimed religious or political activities.

■ As a reviewing court, we defer to the immigration judge's findings that an alien's testimony lacks credibility when the immigration judge states a specific, cogent reason, or a legitimate, articulable basis for the findings. *Ghasemimehr,* 7 F.3d at 1391 (citing *Berroteran–Melendez v. INS,* 955 F.2d 1251, 1256 (9th Cir.1992)); *see also Estrada v. INS,* 775 F.2d 1018, 1021 (9th Cir.1985) ("because the immigration judge is in the best position to evaluate an alien's testimony, his or her credibility determinations are to be given much weight"). Here, specific, convincing reasons, such as the inadequate and contradictory nature of petitioner's testimony, support the finding that such testimony lacks credibility. Also, although petitioner presented some evidence that his uncle was killed several years ago in Teheran, he failed to provide a nexus between his uncle's death and his current fear of persecution. Moreover, the BIA also concluded that, in light of petitioner's serious criminal record, it would deny asylum as a matter of discretion even if petitioner had proven a well-founded fear of persecution. Therefore, we conclude the BIA did not abuse its discretion in denying asylum.

Because we hold that the BIA did not abuse its discretion in finding that petitioner failed to meet his burden of a well-founded fear of persecution required for asylum, we need not address whether petitioner would meet the more stringent standard of a clear probability of persecution required for withholding of deportation. *Behzadpour,* 946 F.2d at 1354; *see also Farbakhsh v. INS,* 20 F.3d 877, 881 (8th Cir.1994) ("clear probability of persecution" standard for withholding of deportation is higher than the "well-founded fear of persecution" standard required for refugee status).

Accordingly, we deny petitioner's request for review.