Shirin **HAMZEHI**; Parviz Hamzehi; Pantheha Hamzehi; Bahareh Hamzehi, Petitioners,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 94–2579.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1995.

Decided Sept. 8, 1995.

William E. Pfeiffer, Omaha, NE, argued, for appellant.

Michell Y.F. Sarko, Dept. of Justice, Washington, DC, argued (David J. Kline, on the brief), for appellee.

Before LOKEN, Circuit Judge, GODBOLD,* Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

LOKEN, Circuit Judge.

The Hamzehi family are Iranian citizens who entered the United States in 1986 on a six-month nonimmigrant visa. The visa expired, and the Immigration and Naturalization Service commenced this deportation proceeding. The Hamzehis conceded deportability, but Shirin Hamzehi filed an asylum application for herself, her husband, and their two daughters. Following a hearing, the Immigration Judge denied the Hamzehis either asylum or withholding of deportation to Iran. *See* 8 U.S.C. §§ 1158 and 1253(h). The Board of Immigration Appeals (BIA) dismissed their appeal, and the Hamzehis

* The HONORABLE JOHN C. GODBOLD, Senior United States Circuit Judge for the Eleventh Circuit, sitting by designation.

now petition for judicial review. *See* 8 U.S.C. § 1105a. Substantial evidence supports the BIA finding that the Hamzehis lack a well-founded fear of persecution should they return to Iran. Therefore, we affirm.

 The Attorney General may grant asylum to a deportable alien who proves "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). A well-founded fear is one that is both "subjectively genuine and objectively reasonable." *Ghasemimehr v. I.N.S.*, 7 F.3d 1389, 1390 (8th Cir.1993). To overturn the BIA's adverse determination on this issue, Mrs. Hamzehi bears a heavy burden. She must show that her evidence "was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *I.N.S. v. Elias–Zacarias*, 502 U.S. 478, 484, 112 S.Ct. 812, 817, 117 L.Ed.2d 38 (1992).

Mrs. Hamzehi submitted two pre-hearing affidavits in support of her asylum application. In those affidavits, she alleged a well-founded fear of both ethnic and political persecution, ethnic persecution because "I belong to the ethnic minority in Iran known as the Kurds," and political persecution because "various members of my family have been active against the Khomeini government." The affidavits went on to relate several incidents in Iran supporting her claim of political persecution.

As is customary, INS referred Mrs. Hamzehi's application and supporting affidavits to the State Department's Bureau of Human Rights and Humanitarian Affairs and requested an advisory opinion. Regarding Mrs. Hamzehi's fear of ethnic persecution, the State Department opined, "[t]here is no pattern of indiscriminate persecution by the Islamic regime against Kurds as such." The Hamzehis did not rely on an alleged fear of ethnic persecution at the hearing or on appeal. Thus, the asylum issue turns on their claim of a well-founded fear of political persecution.

 This claim was supported by Mrs. Hamzehi's pre-hearing affidavits and by the testimony of Mr. and Mrs. Hamzehi at the hearing. An applicant's uncorroborated testimony, if believed, may establish an objectively reasonable fear of persecution. *See Ghasemimehr*, 7 F.3d at 1391. However, the Immigration Judge found that Mr. and Mrs. Hamzehi were not credible, and the BIA agreed. This credibility finding is the principal focus of the Hamzehis' appeal. We must defer to a credibility finding "when the immigration judge states a specific, cogent reason, or a legitimate, articulable basis for the finding." *Hajiani–Niroumand v. I.N.S.*, 26 F.3d 832, 838 (8th Cir.1994).

Mrs. Hamzehi's pre-hearing affidavits described a number of seemingly unrelated events over a significant period of time. Taking these events in chronological order, Mrs. Hamzehi first related numerous incidents in 1980 and 1981, the early days of the Khomeini regime, such as the Hamzehis' participation in student demonstrations that were violently dispersed; frequent questioning and threats by the regime's Revolutionary Guards; Mr. Hamzehi's arrest and detention for three days following one such student demonstration; and atrocities visited upon relatives and neighbors during this period of mob rule. The second series of events, which are clearly the most relevant to her fear-of-persecution claim, involved Mrs. Hamzehi's brother and his wife. Mrs. Hamzehi explained that her sister-in-law, an activist in the Mojahedeen Khalq opposition party, was executed in 1983. This caused her brother to increase his opposition activities and eventually flee Iran in 1985, following which the Revolutionary Guards repeatedly invaded the Hamzehis' home and coercively questioned them about her brother, who eventually was granted refugee status in West Germany. Finally, Mrs. Hamzehi averred that in 1986 a religion teacher questioned daughter Bahareh Hamzehi at school regarding her parents' political opinions, and in late 1987 a younger brother mysteriously disappeared for a few months while studying at the University of Tehran.

While this is a substantial showing on the fear-of-persecution issue, the record also contains considerable evidence suggesting that the Hamzehis' professed fear of political persecution is not objectively reasonable, as both

the Immigration Judge and the BIA noted. Mr. and Mrs. Hamzehi are not members of an opposition political organization and have not been politically active in the United States or Iran. The family departed Iran on a visa issued to Mr. Hamzehi, and they had previously been permitted to depart for a vacation in West Germany, the country that is harboring Mrs. Hamzehi's fugitive brother. Before leaving Iran in 1986, Mrs. Hamzehi was employed by the Iranian government giving German language lessons over state-owned television. Addressing Mrs. Hamzehi's claim of political persecution, the State Department advisory opinion letter commented:

> Hundreds of thousands of Iranians are related to persons who have been imprisoned, executed or otherwise punished because of their anti-regime political activity. There is no pattern of persecution by the regime against such persons simply because of their family relationship to such people. In the case of the applicant, she was able to get a valid Iranian passport for travel to the U.S. We doubt very much that the regime would have permitted such travel had she in fact been singled out for persecution. In a word, the assertions made by this applicant simply do not reflect the current situation in Iran.

▮ Given this conflicting evidence, the credibility of the Hamzehis' hearing testimony is critical to their request for asylum. To prove a present, well-founded fear of political persecution, it is not enough to show that the Hamzehis were harassed as student demonstrators in 1980, or that Revolutionary Guards invaded their home and hounded them while looking for Mrs. Hamzehi's fugitive brother in the mid–1980s. Mrs. Hamzehi must show why these rather dated events provide an objectively reasonable basis for a present fear of "particularized persecution directed at her personally on the basis of her political opinion," *Safaie v. I.N.S.*, 25 F.3d 636, 640 (8th Cir.1994), or, we would add in view of the dissent's extended focus on the nuclear family question, on the basis of her family's political opinions.

▮ Viewed in this light, the Immigration Judge's credibility finding must be sustained.

At the hearing, whenever the Judge sought to question Mr. or Mrs. Hamzehi about when a particular event occurred, why it occurred, how often it occurred, or even where they were living at the time it occurred, the Hamzehis could not supply the kind of specific, consistent details that tend to reassure a factfinder as to a witness's credibility. Their inability to provide supporting details regarding the events in question, or even consistently to describe those events, gave the Immigration Judge a "legitimate, articulable basis" for his adverse credibility finding.

On appeal, the Hamzehis complain that the Immigration Judge improperly emphasized minor details, in effect concluding that, because Mrs. Hamzehi was confused about dates, "she must have been lying about all of the other horrors that have been visited upon her and her family." But the ultimate issue here is not simply whether the Hamzehis were mistreated at the hands of the Iranian government before they left Iran. Rather, the issue is whether the injuries inflicted upon them in the past were so selective and severe as to provide a well-founded fear that they will be persecuted as political enemies of the state if they return to Iran at the present time.

For example, the Hamzehis rely heavily on the State Department's 1990 Country Report for Iran, which states that the Iranian government is known to harass relatives of fugitive political suspects to induce the suspects to give themselves up. Department of State, *Country Reports on Human Rights Practices for 1989* 1401 (1990). But accepting that as true, relevant questions remain, such as whether the Hamzehis were harassed in the mid–1980s because government agents were seeking Mrs. Hamzehi's fugitive brother and, if so, whether that sort of familial harassment would continue now that her brother has been granted asylum in Germany. The Hamzehis' vague, inconsistent hearing testimony simply shed no light on these important questions.

Because vagueness, confusion, and inconsistencies permeated the Hamzehis' testimony, they failed to establish an objectively reasonable link between the mistreatments of the past and their claim of a present, well-

founded fear of political persecution. Thus, while inconsistencies of this nature might not justify the denial of claims supported by more substantial evidence, in this case the weaknesses in the Hamzehis' testimony are fatal to their claim because we are left with no compelling evidence of a well-founded fear of political persecution.

Accordingly, we must uphold the BIA's determination that the Hamzehis are not entitled to asylum or withholding of deportation. We agree with the Hamzehis that, by our standards, today's living conditions in Iran are inhospitable or worse for women and for those who would prefer a different political order. However, they have not shown the sort of particularized threat of severe harm that would support a well-founded fear of persecution. *Safaie*, 25 F.3d at 640.

The decision of the BIA is affirmed.

GODBOLD, Senior Circuit Judge, dissenting:

This is a deeply troubling case. The immigration system, and the judicial system, of our country can do better than this.

I would hold that the petitioners met their burden of proving that they were refugees entitled to asylum, based upon a well-founded fear of persecution because of the activities of their family as a "particular social group." Short of that, at a minimum, I would reverse and remand the case for further proceedings before the Immigration Judge, with directions to consider all evidence under correct standards for determining credibility, for burden of proof, and under current regulations. I, therefore, respectfully dissent from the affirmance of the decision of the Board of Immigration Appeals.

Petitioners' application sets out fear of persecution based upon the activities of petitioners' family as a "particular social group," pursuant to 8 U.S.C. § 1101(a)(42)(A):

The term "refugee" means (A) any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to ... that country because of persecution or a well-founded fear

of persecution on account of race, religion, nationality, *membership in a particular social group,* or political opinion.

A well-founded fear of persecution has both a subjective and an objective component. It is not questioned that petitioners have a subjective fear of persecution if they return to Iran. To meet the objective component it is sufficient if the applicant shows that a reasonable person in his/her circumstances would fear persecution for one of the five grounds specified in § 1101(a)(42)(A). *Matter of Mogharrabi,* 19 I & N Dec. 439 (BIA 1987). The Immigration Judge found, as he put it, "essentially on my credibility determination," that petitioners had failed to establish a well-founded fear of persecution. The Board of Immigration Appeals accepted that credibility-based determination.

The IJ's decision of lack of credibility was based upon a fragment of the evidence concerning fear of persecution of petitioners' "particular social group." With respect to substantial parts of the social group evidence he did not comply with standards for credibility findings. He was dubious of one part of that evidence so he swept out all of it. The Board of Immigration Appeals erred in accepting his credibility findings.

On appeal this court erroneously sustains the credibility findings. The rulings of the IJ and the Board have removed from the case the greater part of the evidence of political activities of petitioners' family and the appalling persecution of them. With the evidence thus emasculated this court has applied the burden of proof for a case based upon particularized persecution directed at the applicant individually and finds it has not been met. Moreover, in doing so it has ignored the effect of a 1990 regulation.

## I. The nature of the case

The petitioners raised the issues of fear of persecution directed at them individually and fear of persecution based upon their membership in a particular social group. The particular social group issue was dealt with by the IJ and the Board. In her Form I-589, Request For Asylum, question 33, Mrs.

Hamzehi was asked if she would return to her home country. She answered:

Hamzehi was asked if she would return to her home country. She answered:

> No. Because I fear and I am certain that I would be persecuted by the government of my home country if I were to return. See a more fully explanation contained in my attached statement.

The "attached statement" was a supplemental affidavit. Later she filed a second affidavit. The IJ considered both as evidence.

In question 31 of Form I–589 Mrs. Hamzehi was asked what would happen if she returned to her home country. She answered:

> I am certain that I would be interrogated and imprisoned. Please see my attached statement.

Question 34 asked: "Have you or any member of your immediate family ever belonged to any organization in your home country?" She responded:

> Yes. Behrooz Aram, my brother, and Parvin Mohamadi, his wife, were members of the Mojahadin Kahlq. Parvin was a member prior to 1982 until her execution in 1983. Behrooz joined in 1983 until his excape (sic) to Germany in 1985. See also my attached statement.

Question 37 was:

> If you base your claim for asylum on current conditions in your country, do these conditions affect your freedom more than the rest of that country's population?

Her response was:

> Since I am Kurdish, I am a member of an ethnic minority and a member of a minority religion. *My family members have been interrogated, imprisoned, executed and murdered for their political and religious positions.* See also my attached statement. (Emphasis added.)

The attached affidavit referred briefly to persecution of Kurds on ethnic and religious grounds, an issue that I lay aside. The more significant portion followed:

> 4. However, I would not be suspected solely on the grounds that I am Kurdish, *but also on the grounds that various members of my family have been active against the Khomeini government.* They are as follows: (Emphasis added.)

Mrs. Hamzehi then set out the persecution of herself and her family members.

—Her sister-in-law, Parvin Mohamadi, was imprisoned, and her baby was born in prison. Subsequently she was executed.

—Her brother, Behrooz Aram (the husband of Parvin), carried on anti-Khomeini activities. The family home was invaded by the Revolutionary Guards searching for him. He fled to Germany.

—Shahin Aram, Mrs. Hamzehi's sister, fled because she was accused by the Khomeini government of participating in the anti-Khomeini war in Kurdistan in 1981.

—Shahin's husband (Mrs. Hamzehi's brother-in-law) was arrested, accused of being an agent for the Israeli government, and imprisoned.

—Mr. Hamzehi was arrested in 1980, 1981, and 1984 and beaten by Guards in 1981.

—Mrs. Hamzehi's cousin was killed by a pro-Khomeini mob.

—Her nephew was imprisoned and tortured for failure to participate in Revolutionary Guard programs.

—Her brother-in-law's sister was active in anti-Khomeini activities, passed out pamphlets, and demonstrated against the government. She was arrested, imprisoned for five years, and now has disappeared. The family believes she has been executed.

—Mrs. Hamzehi's eight-year-old daughter was interrogated by teachers at school concerning political and religious activities of the family.

—Her younger brother, Said Aram, refused to flee the country because there was no one else to care for his parents. He disappeared for about two years but subsequently reappeared.

In her first affidavit Mrs. Hamzehi summarized: "It is no secret that [our] whole family has openly expressed their animosity toward the government of Iran." R. 277. In her second affidavit she set out that she and her husband participated in anti-Khomeini demonstrations that were broken up by Rev-

olutionary Guards using chains and sometimes firearms. She was detained, interrogated, and forced to sign a statement denouncing anti-Khomeini activities and threatened with harm if she demonstrated against the government.

Thus it is clear that the petitioners asserted a well-founded fear of persecution based upon the political opinions and activities of Mrs. Hamzehi and other members of their politically active family.

In his oral decision the Immigration Judge recognized the issue of fear of persecution based on membership in a social group.

> [Mrs. Hamzehi] claims persecution on the basis of race, religious, political opinions and *membership in a political social group* because she is a Kurd *and also because of her relationship to her brother, Behrooz Aram,* who is recognized as a refugee in West Germany.

R. 076. He described the burden of proof as follows:

> [A]n applicant must show either that he or she has been the victim of persecution or a well-founded fear of persecution because of race, religion, nationality, *or membership in a particular social group.*

R. 076–077. After discussing the probative effect of petitioners having obtained passports and visas to visit Turkey, Germany and the United States, the IJ concluded:

> These facts do not indicate that the Iranian government has any interest *in pursuing this family.* (Emphasis added.)

R. 079.

The Board recognized that Mrs. Hamzehi had raised the fear of persecution based upon the actions of family members:

> In her submitted Form I–589, the respondent stated that she will be persecuted if she is returned to Iran because she is a Kurd. *She also based her claim upon the circumstance that many of her family members had taken actions against the Khomeini Government.* The respondent stated that her brother fled from Iran in 1985 and that her sister-in-law was thereafter executed because she was a member of the Mojahadin Kahla. The respondent also stated that her sister fled from Iran.

> She stated that her husband was arrested several times without reason. (Emphasis added.)

R. 003. At R. 004 the Board referred again to the necessity of proof of "membership in a particular social group."

In this court petitioner specifically raised the political activities and beliefs of her family members:

> In the [I–589] application, the Petitioner swears that she fears that should she and her family be forced to return to Iran, *they would be subject to persecution because* the petitioner is an ethnic Kurd but *more importantly because of the political activities and beliefs of Petitioner and her husband and the political activities and beliefs of Petitioner's family.* (Emphasis added.)

Brief p. 3. Again, at p. 16, petitioners referred to the necessity of showing a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

## II. The governing law on membership in a social group

The Board construes "membership in a particular social group" to refer to persons who hold an immutable characteristic or common trait such as sex, color, *kinship* or in some cases shared past experiences such as land ownership or military service. *Matter of Acosta,* 19 I & N Dec. 211, 233 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi,* 19 I & N Dec. 439 (BIA 1987). In *Sanchez–Trujillo v. INS,* 801 F.2d 1571, 1576 (9th Cir.1986), the Ninth Circuit sought to give workable meaning to "particular social group":

> [T]he phrase 'particular social' group implies a collection of people closely affiliated with each other, who are actuated by some common impulse or interest. Of central concern is the existence of a voluntary associational relationship among the purported members, which imparts some com-

mon characteristic that is fundamental to their identity as a member of that discrete social group.

*Id.* at 1576 (footnote omitted). In inquiring into membership in a particular social group our ultimate purpose is to decide whether membership in the group will be sufficiently probative of persecution or well-founded fear of persecution that there need be no proof of acts directed at the individual member. I.e., can fear of, or risk of, persecution be inferred from membership?

It is obvious that a group can be so broad that membership cannot alone supply the necessary inference. In *Sanchez–Trujillo* an alleged group of young, urban, working-class males was held overbroad.

[T]he class of young, working class, urban males of military age does not exemplify the type of 'social group' for which the immigration laws provide protection from persecution. Individuals falling within the parameters of this sweeping demographic division naturally manifest a plethora of different lifestyles, varying interests, diverse cultures, and contrary political leanings.

*Id.* at 1576–77. This court has held that a group composed of all Iranian women is not, by virtue of gender and harsh restrictions based upon women, a particular social group. *Safaie v. INS,* 25 F.3d 636 (8th Cir.1994). That decision referred to the ultimate inquiry I mentioned above:

We believe this category is overbroad, because no factfinder could reasonably conclude that all Iranian women had a well-founded fear of persecution based solely on their gender.

*Id.* at 640. However, a group of Iranian women who advocate women's rights and refuse to comply with Iranian customs relating to dress and behavior and whose opposition might bring severe consequences "may well satisfy the definition of 'particular social group.'" *Id.*

Courts have said that a family is a "particular social group." *Sanchez–Trujillo v. INS, supra.* In 1993, in *Gebremichael v. INS,* 10

F.3d 28, 36 (1st Cir.1993), the First Circuit held:

There can, in fact, be no plainer example of a social group based on common, identifiable, and immutable characteristics than that of the nuclear family.

10 F.3d 28, at 36. Without more this seems to me overbroad. It all depends. Kin may be too scattered, their common interests too diverse, their acts giving rise to possible persecution too remote, so that a factfinder may not reliably infer fear of persecution from kinship alone. This analysis accords with the requirement of causal relationship "on account of political opinion." *INS v. Elias–Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).

In my view this family met the evidentiary requirements for particular social group membership sufficient to infer fear of persecution. Before reaching this I must, however, examine the IJ's rejection of evidence on credibility grounds.

### III. The findings on credibility

As I have pointed out, the IJ and the Board recognized that this was a "particular social group" case. The decision was based, however, on credibility grounds that caused them to reject evidence of persecution of family members for their anti-government activities. The IJ found:

My conclusion is based essentially on my credibility determination. I think the respondents' account is dubious.... I found the female respondent's account to be very contradictory. The case rests almost entirely on the respondents' testimony, yet her account changed repeatedly concerning the incidents which occurred and when they occurred, and the number of [sic] they occurred and where they occurred. Because of the contradictions and conflicts in her testimony, it's not possible to state with any degree of certainly when, where, [sic] how many times she came in contact with the revolutionary guard in Iran.

Furthermore, the explanation that she gives for the interest of the revolutionary guards in her family is implausible. She testified that they visited her repeatedly

because they were looking for her brother, Behrooz, who procured refugee status in West Germany. However, she testified that he fled Iran in 1983. Yet she claimed that the revolutionary guards visited her on a regular basis for three years, from 1983 until she left Iran in April 1986 because they were looking for her brother. R. 077–078. Fairly read, this only refers to evidence of invasions of the Hamzehi home by Revolutionary Guards—how often the invasions occurred, when, where, and for what purpose, and the interest the Guards had that caused them to invade the family home.

This court will defer to the Immigration Judge's findings that an alien's testimony lacks credibility when the IJ "states a specific, cogent reason, or a legitimate, articulated basis for the findings." *Hajiani–Niroumand v. INS,* 26 F.3d 832, 838 (8th Cir.1994). Mrs. Hamzehi did exhibit confusion and uncertainty about dates—when she moved from Tehran to Kermanshah, back to Tehran, and back to Kermanshah, and the number and frequency of invasions by the Guards of each place—per week, per month, and finally she responded affirmatively to government counsel's suggestion of 200 visits over one two-year span. The IJ was concerned about the number, dates, locations, and time spans of the invasions.

Both IJ and Board focused on Mrs. Hamzehi's testimony about the Revolutionary Guards as "dubious" and "implausible." The Ninth Circuit has addressed this kind of rejection of testimony by vague label:

> [O]n a matter as important as this, if an asylum applicant's plea is to be rejected and he is to be returned home—possibly to face renewed threats to his life—simply because an IJ doubts his credibility, the IJ must make a more explicit and direct findings that he is untruthful than was made here. The mere statement that a petitioner is 'not entirely credible' is not enough.

*Aguilera–Cota v. U.S. I.N.S.,* 914 F.2d 1375, 1383 (9th Cir.1990).

Even if one accepts that Mrs. Hamzehi inflated the Guard evidence, it is not disputed that the Guards did invade the family home and did physically abuse her and her husband. Both IJ and Board were impressed by Mrs. Hamzehi's affirmative response to INS counsel's suggestion of 200 visits by the Guards over a two-year span. R. 128. In oral argument counsel for INS apologized to the IJ for what he labeled as his "trick" of possibly misleading Mrs. Hamzehi to commit to so large a number of invasions. Then he withdrew the word "trick" and substituted "procedure." R. 224. Our government cannot be proud of this revelation or of its continued emphasis upon 200 as an unbelievable figure.

The Board accepted the IJ's characterization of "implausible" for Mrs. Hamzehi's explanation of the interest of the Guards in the family. Yet it is not questioned that Mrs. Hamzehi's older brother had fled the country after his wife had been imprisoned, had borne her baby in prison, and then had been executed. The logical inference is that the Guards were searching for the brother because they had not been able to find him. No evidence suggests that the invasions by the Guards were mindless, or coincidental, or random.[1]

The IJ did not address the other specific evidence set out in Mrs. Hamzehi's affidavits, described above in Part I, which detailed political activities and persecution of other members of her family. The fate of the sister-in-law, imprisoned and then executed after her baby was born, was not mentioned. The flight of her husband, Mrs. Hamzehi's brother, is acknowledged, in fact accepted, but not recognized by the IJ as an element of familial persecution. Not mentioned are the imprisonment of the brother-in-law as an alleged agent of Israel, and the flight of his wife; imprisonment and torture of Mrs. Hamzehi's nephew, believed to have been executed; disappearance of Mrs. Hamzehi's younger brother, who refused to flee the country because there was no one else to

---

1. The Board's decision says that "the mere fact that the respondent's home was searched does not constitute persecution." R. 006. Bearing in mind that the fact of invasions and the physical abuse inflicted on wife and husband are not disputed, this is an astonishing statement.

care for his parents; interrogation of the Hamzehi's eight-year old daughter. No evidence indicates that any of these events did not occur. These are discrete events involving family members other than those subjected to Revolutionary Guards' intrusions. All of this evidence has been removed from consideration because the IJ felt that Mrs. Hamzehi had inflated her "account" of Revolutionary Guards' invasions. This does not meet the requirements of a specific, cogent reason, or legitimate, articulable basis for an adverse finding of credibility. It is too narrow, too facile, too easy a means to avoid wrestling with issues and evidence.

The review by the Board is similarly flawed. It held:

> The immigration judge recounted the evidence set forth by the respondent and concluded that she failed to establish statutory eligibility for the relief and so it was denied. The immigration judge did not find the respondent's testimony persuasive or credible and characterized it as dubious. The immigration judge noted that the respondent's account changed repeatedly concerning when incidents occurred. The immigration judge also found it implausible that the Revolutionary Guards would seek information regarding her brother for 3 years following his departure from Iran.

R. 004. The IJ had not "recounted the evidence set forth by the respondent." He had targeted one area of evidence of mistreatment and then rejected all. The Board too focused on the Revolutionary Guards' invasions and on Mrs. Hamzehi's confusion about the dates over which they occurred. It added conclusions that the husband was arrested in a group following mass demonstrations and not as a result of "specific actions taken by him," and that the petitioners' political activities were minor. Other evidence of family persecution was not addressed. Moreover, the IJ had rejected the evidence

of the husband's arrest because it "had nothing to do with" the invasions by the Revolutionary Guards. It was not claimed that the arrests brought on the invasions. This holding reveals the IJ's fascination with the Revolutionary Guards' evidence as controlling the case.

The IJ did address, and the Board referred to, one other specific piece of evidence described as an inconsistency between Mrs. Hamzehi and her husband concerning the number of times that he was arrested. IJ and Board misread the record. At the hearing Mrs. Hamzehi was asked about the details of her husband's *arrest in 1981*, when he was arrested at a demonstration, held in jail for three days, and then released. R. pp. 174–81. Mr. Hamzehi was asked about *only the 1981* arrest:

> Q. Now, one of the things that was brought up on direct examination . . . or on the Judge's examination had to do with the fact of your arrest.
>
> A. Yes.
>
> Q. Do you remember that?
>
> A. Yes.
>
> Q. Okay do you remember when that occurred?
>
> A. 1981.

The matter that had been brought out on direct examination had been the 1981 arrest. There followed, on cross-examination by counsel for the INS:

> Q. When you were arrested in the demonstration *in the spring of 1981* . . . .

R. p. 194. At no time was Mr. Hamzehi asked to enumerate the times he had been arrested, or the dates of other arrests. His questioning was limited to the 1981 arrest. There was no contradiction between husband and wife.[2]

---

2. Another issue deserves comment. The IJ considered that, measured by objective standards, Mrs. Hamzehi could not have had a fear of persecution because·for a time she was employed by a government-owned television station. She had studied German and had lived in Germany while attending school there and while her hus-

band was attending school, and was qualified to teach German. She was approached to give German lessons on television. She explained that initially she refused the position but accepted after being advised by teachers at her university that she could not refuse. The IJ did not question the fact of her employment, the nature

## IV. The decision by this court

On appeal this court has accepted the IJ's credibility findings and the Board's approval of them. With the evidence thus emasculated the court has then applied the burden of proof applicable to individual persecution, requiring Mrs. Hamzehi to "provide an objectively reasonable basis for a present fear of particularized persecution directed at her personally on the basis of her political opinion," citing *Safaie v. INS*, 25 F.3d 636, 640 (8th Cir.1994). Once the particular social group evidence is properly considered this burden of particularized persecution is inapplicable.

Moreover, by regulation the requirements of proof of fear of persecution based on social group membership have been softened. A regulation effective October 1, 1990 provides:

[T]he Asylum Officer or Immigration Judge shall not require the applicant to provide evidence that he would be singled out individually for persecution if:

(A) He establishes that there is a pattern or practice in his country ... of persecution of groups similarly situated to the applicant ...; and

(B) He establishes his own inclusion in and identification with such group of persons such that his fear of persecution upon return is reasonable.

8 C.F.R. § 208.13(b)(2)(i) (1995).

The hearing for petitioners was conducted June 4, 1990, and the IJ's oral decision given that day. The decision of the Board was entered May 25, 1994. It seems to me that the regulation should have been retroactively applied to the 1990 hearing. It should have been applied by the Board in its 1994 decision. It should be applied by this court.

I respectfully dissent from the decision to affirm.

of it, or the duration of it but rather its probative value with respect to fear of persecution. Mrs. Hamzehi testified that she took the job because of fear. The only evidentiary basis for the IJ's conclusion was a statement in the *Country Report* that the government tightly controls the media.

It might be self evident that a political enemy would not be employed to telecast on political subjects or current news or to spread pro-Western propaganda. But the IJ did not consider—or even reveal—that Mrs. Hamzehi's role was to conduct German language lessons.