# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1958

_____

Petre I. Kratchmarov,                *
                                         *

          Petitioner,       *
                                         *

                                         *   On Petition for Review of
          v.                     *   an Order of the Immigration
                                         *   and Naturalization Service.

Michael Heston, District Director  *
of the United States Immigration   *
and Naturalization Service; Janet Reno, *
Attorney General of the United States,  *
                                         *

          Respondents.     *

_____

Submitted: December 14, 1998

Filed: March 30, 1999

_____

Before BEAM and LOKEN, Circuit Judges, and BOGUE,[1] District Judge.

_____

BEAM, Circuit Judge.

Petre I. Kratchmarov, a citizen of Bulgaria, petitions for review of a decision of the Board of Immigration Appeals (BIA) denying his application for asylum under

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

8 U.S.C. § 1158(a) and refusing to withhold deportation under 8 U.S.C. § 1253(h). For the reasons discussed below, we affirm the decision of the BIA.[2]

## I. BACKGROUND

Kratchmarov entered the United States on June 20, 1991, on a non-immigrant visa. On July 8, 1994, the Immigration and Naturalization Service (INS) ordered Kratchmarov to show cause why he should not be deported due to his failure to leave the United States after his period of authorized stay had expired. At the initial hearing, Kratchmarov conceded deportability but requested an opportunity to apply for political asylum and a withholding of deportation. Following a hearing on the merits, an immigration judge denied Kratchmarov's application. On March 12, 1998, the BIA upheld the immigration judge's order, and set a voluntary departure date thirty days from the date of its decision. This appeal followed.

Kratchmarov's basic claim is that he was subject to past persecution in Bulgaria because of his political opinions and his status as a former police officer who refused to obey orders, and that he has a well-founded fear of future persecution if he returns. The record, including Kratchmarov's testimony at his deportation hearing, provides the following facts. Kratchmarov underwent three years of training at a police

---

[2]The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996), amended by Act of Oct. 11, 1996, Pub. L. No. 104-302, 110 Stat. 3656, repealed 8 U.S.C. § 1105a and replaced it with a new judicial review provision. See IIRIRA § 306. The new provision governs removal proceedings commenced after April 1, 1997. See IIRIRA § 309(a). Where, as here, deportation proceedings are commenced before IIRIRA's general effective date of April 1, 1997, and the final order of deportation or exclusion is entered more than thirty days after IIRIRA's September 30, 1996, date of enactment, 8 U.S.C. § 1105a, along with the addition of some transitional changes, continues to govern our consideration of this petition. See IIRIRA § 309(c)(1) & (4).

academy in Bulgaria, after which he was employed as a police officer. While serving as a police officer, he repeatedly refused to follow the orders of his superiors to beat and strike members of the Turkish minority demonstrating against the communist government. He believed that such actions were a violation of human rights. His opposition to the government's policy of mistreating minority groups led him to resign from the police force in February 1990. He had served as a police officer for about seven or eight months at the time of his resignation. After he left the police force, he was deprived of job opportunities, placed under virtual house arrest in his home city of Hissar, issued traffic citations for no reason, had his hair forcibly cut, and was detained and beaten for leaving the city to participate in anti-government demonstrations, and for attempting to vote against the communist party. Kratchmarov obtained a passport and a visa to come to the United States in 1991 as an exchange visitor, but asserts that his real reason for leaving was to escape persecution for his political opinions and activities. His mother, with whom he regularly keeps in touch, has informed him that since his departure from Bulgaria, he has repeatedly been issued military summons to report to the military office in Hissar as well as court summons to appear in regional court.

## II.    DISCUSSION

Under the Immigration and Nationality Act, the Attorney General has the discretion to grant asylum to a "refugee." See 8 U.S.C. § 1158(b)(1). A refugee is a person who is unable or unwilling to return home "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). In most cases, the critical inquiry is whether the applicant has a well-founded fear of future persecution upon return to his or her country. See Cigaran v. Heston, 159 F.3d 355, 357 (8th Cir. 1998).

To establish such a fear, an applicant must demonstrate a fear that is both subjectively genuine and objectively reasonable. See id. The applicant is entitled to a presumption of a well-founded fear of future persecution if past persecution is established, and the burden then shifts to the INS to show by a preponderance of the evidence that "conditions in the applicant's country . . . have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he or she were to return." Id. (internal quotation and citation omitted).

Here, the BIA found that, even assuming Kratchmarov had endured past persecution, the INS had successfully rebutted the presumption of future persecution by proving that conditions in Bulgaria had changed.[3] While acknowledging that communists still enjoyed positions of substantial power in Bulgaria, the BIA noted that the United States Department of State Profile of Asylum Claims and Country Conditions for Bulgaria for 1994 (hereinafter Country Report) found that anti-communists returning to Bulgaria faced no general risk of persecution by the government. The BIA further noted that the efforts of Bulgarian authorities to compel Kratchmarov's appearance in court and to conscript him into military service were perfectly legitimate in light of the fact that Kratchmarov had not fulfilled the requisite amount of police service in repayment for his extensive police training.

We review the BIA's factual findings underlying its refusal to grant asylum, under the substantial evidence standard. See Hajiani-Niroumand v. INS, 26 F.3d 832, 838 (8th Cir.1994). Under this standard, this court must determine whether, based on the record considered as a whole, the BIA's decision was supported by

---

[3]Because we find that there was substantial evidence to support the BIA's decision that Kratchmarov lacked a well-founded fear of future persecution, we decline to discuss the government's other arguments that: (1) Kratchmarov failed to establish persecution on account of political opinion or on account of membership in a social group; and (2) that his past mistreatment did not rise to the level of persecution.

reasonable, substantial, and probative evidence. See id. Reversal of the BIA's decision is warranted only if the petitioner shows that the evidence was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution. See id.

After carefully reviewing the evidence,[4] we believe that a reasonable factfinder could conclude that Kratchmarov's fear of future persecution was not objectively reasonable. Kratchmarov presented evidence in the form of newspaper articles and reports of human rights violations to support his claim that ex-communists in Bulgaria still wield substantial power in the government and that police violence against minorities such as the Romas and Macedonians continues. However, there was also substantial evidence from which a reasonable factfinder could conclude that the political situation in Bulgaria had changed in ways that rendered Kratchmarov's fear of future persecution based on his past activities unreasonable. The Country Report stated that country conditions had changed to the extent that they no longer supported the presumption that past mistreatment under the communist regime would lead to future mistreatment. It further noted that even serious dissidents had visited or relocated to Bulgaria without any problem. Furthermore, the Country Report specifically rejected assertions that former communists who now hold power under the label of the Bulgarian Socialist Party would seek retribution against politically uncongenial elements.

Kratchmarov, nevertheless, argues that the military and court summons he has been issued since his departure from Bulgaria indicate that Bulgarian authorities remain intent on persecuting him upon his return. We agree with the BIA's

---

[4]In assessing the country conditions in Bulgaria, we are limited to the evidence presented in the materials contained in the administrative record before us on appeal. See 8 U.S.C § 1105a(a)(4); see also Pub. L. No. 104-208, 110 Stat. 3009-627, § 309(c)(4)(B).

conclusion that these actions evidence only an attempt by the Bulgarian government to recoup the cost of Kratchmarov's police training. In his affidavit, Kratchmarov states that the court clerk in Bulgaria told his mother that the reason for the court summons was that Kratchmarov owed the government money for his police education because he did not serve long enough in the police force. Furthermore, the evidence shows that in March 1990, prior to Kratchmarov' s departure from Bulgaria, he had received a notice from the Department of Finance in Sofia indicating that he owed money for his police academy training. The letter even indicated that the amount due would be discounted by the period of time Kratchmarov had served in the police force, approximately eight months. Finally, despite this outstanding debt, Kratchmarov seems to have had little difficulty in obtaining both a passport and a visa to leave the country the following year. All these facts belie Kratchmarov's claim that the military and court summons show that the government is awaiting his return in order to persecute him.

Finally, at oral argument, Kratchmarov argued that the evidence indicates that upon his return to Bulgaria, he will: (1) be conscripted into the military; (2) once again be asked to carry out human rights abuses against other minority groups; and (3) once again be subject to persecution if he refuses. In essence, Kratchmarov argues that he will be put in the very same predicament he found himself in before he left Bulgaria. Although there is evidence suggesting that Kratchmarov may be conscripted upon his return, we think that the remaining chain of events he presents are simply too speculative to support a claim of persecution. To prove the objective reasonableness of a fear of persecution, a petitioner must show, based upon credible, direct, and specific evidence, that a reasonable person in the petitioner's circumstances would fear persecution if returned to the petitioner's native country. See Ghasemimehr v. INS, 7 F.3d 1389, 1390 (8th Cir. 1993). "The fear must have a basis in reality and must be neither irrational nor so speculative or general as to lack

credibility." <u>Miranda v. United States INS</u>, 139 F.3d 624, 627 (8th Cir. 1998). We do not think that that standard has been met.[5]

The standard for withholding of deportation requires applicants to show a "clear probability" that they will face persecution in the country to which they will be deported. <u>See</u> <u>Behzadpour v. United States</u>, 946 F.2d 1351, 1354 (8th Cir. 1991). This standard is more difficult to meet than the "well-founded fear" standard for asylum. <u>See</u> <u>id.</u> Because substantial evidence supports the denial of asylum, we also affirm the BIA's denial of withholding of deportation. <u>See</u> <u>id</u>.

## III.   CONCLUSION

For the foregoing reasons, the decision of the Board of Immigration Appeals is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5]Kratchmarov also argues that he should be granted "humanitarian asylum" on the basis of past persecution alone. Because the BIA was skeptical that the incidents alleged by Kratchmarov even constituted persecution, it did not address the question of humanitarian asylum. Humanitarian asylum is reserved for those cases in which the past persecution suffered has been particularly atrocious. <u>See</u> <u>Cigaran</u>, 159 F.3d at 357. Even if we were to assume that the actions taken against Kratchmarov amounted to persecution, an issue which we decline to analyze, we find that the incidents that Kratchmarov cites do not rise to the requisite level of atrocity for a grant of humanitarian asylum.