Homi J. MINWALLA, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 82–1924.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1983.

Decided May 5, 1983.

Lauri Steven Filppu, Dept. of Justice, Robert Kendall, Jr., Atty. Gen., Litigation and Legal Advice Section, Criminal Div., Dept. of Justice, Washington, D.C., for respondent.

Homi J. Minwalla, pro se petitioner.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

HENLEY, Senior Circuit Judge.

This is a petition for review of an order by the Board of Immigration Appeals (Board) denying Homi J. Minwalla's motion to reopen his deportation proceedings. The immigration judge found Minwalla deportable and denied his request for withholding of deportation on the ground of extreme hardship. The Board affirmed its decision and denied Minwalla's motion to reconsider and to reopen the proceeding on the basis of his request for asylum. On appeal Minwalla claims that the proceedings violated his right to due process and the Board abused its discretion in denying his motions to reconsider and reopen the proceedings. We find no reversible error in the proceedings and accordingly affirm.

Minwalla, a native and citizen of Pakistan, entered the United States on September 17, 1970, as a nonimmigrant student authorized to remain until September 17, 1974. He obtained a college degree in electrical engineering and South Asian Studies. At a deportation hearing begun on February 22, 1978, Minwalla appeared before an immigration judge, admitted the allegations in the order to show cause, conceded deportability, but requested suspension of deportation for reason of extreme hardship under section 244(a)(1) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. § 1254(a)(1). The immigration judge advised him of his right to retain counsel, but he chose to represent himself. He designated Pakistan as the country of deportation.

The hearing was continued on April 18, 1978, at which time Minwalla presented evidence on his extreme hardship claim. The evidence was as follows: (1) petitioner resided in the United States for ten years and thus had become culturally acclimated; (2) he had family ties in the United States, a cousin, although his immediate family lived in Pakistan; (3) the quota for Pakistani immigrants was oversubscribed; (4) it

would be a financial burden to leave the United States only to return later; (5) he had always cooperated with the immigration authorities; (6) he was of good moral character and an accomplished student; (7) he was scheduled to begin law school that fall; and (8) he would suffer psychological trauma in Pakistan on account of his religion.

In support of the last claim Minwalla testified that he was a member of the Zoroastrian faith which has five thousand persons in a total population of seventy million. Along with the other religious minority, the Hindus, the Zoroastrians had been persecuted by the Moslems in the 1970 civil war but were promised that Pakistan would remain a secular state. In 1977 a military dictator overthrew the democratically elected president and established an Islamic order. The Zoroastrians are being systematically removed from government jobs. Furthermore, Zoroastrians have been harassed because of their involvement in businesses not sanctioned by the Islamic order, such as liquor shops, and because they have been financially successful. Finally, all citizens were required to apply for a national identity card that identifies the applicant's religion.

Over a year after the hearing, on July 29, 1979, the immigration judge advised Minwalla to submit an application for asylum under section 243(h) of the Act, 8 U.S.C. § 1253(h). He immediately submitted an application, but it was never acted on, and the immigration judge's decision that issued eight months later in March of 1980 did not mention it. The decision denied Minwalla's claim of extreme hardship, and was affirmed by the Board of Immigration Appeals on December 23, 1981.

On his second motion to reopen the proceeding, Minwalla raised his asylum claim for the first time before the Board and alleged as new facts in support of these claims that (1) he was a student in good academic standing at the University of Minnesota law school; (2) he would not be able to practice law in Pakistan because of the new Islamic legal system; (3) he had not filled out the religious identity card and, therefore, was subject to criminal prosecution in Pakistan; and (4) political conditions had worsened for the religious minorities in Pakistan. The Board denied Minwalla's motion because he failed to establish a prima facie showing that if deported he would be subject to persecution or extreme hardship. It is from this order that Minwalla appeals.

Minwalla argues on appeal that the immigration judge's failure to advise him of his right to apply for asylum during the deportation proceeding violated due process. Petitioner claims that this duty arose by virtue of the fifth amendment and regulations promulgated under the Act by the Immigration and Naturalization Service (INS). The regulations require the immigration judge to inform an alien of his right to apply for temporary withholding of deportation to the alternate countries designated for deportation by the immigration judge. 8 C.F.R. § 242.17(c) (1979).[1] The judge's duty established by this regulation goes only to the countries specified by the judge, not to the country voluntarily designated by the alien. *Ramirez-Gonzalez v. INS,* 695 F.2d 1208, 1212 (9th Cir.1983).

1. 8 C.F.R. § 242.17(c) (1979) reads in part as follows:

(c) **Temporary withholding of deportation.** The special inquiry officer shall notify the respondent that if he is finally ordered deported his deportation will in the first instance be directed pursuant to section 243(a) of the Act to the country designated by him and shall afford the respondent an opportunity then and there to make such designation. The special inquiry officer shall then specify and state for the record the country, or countries in the alternate, to which respondent's deportation will be directed pursuant to section 243(a) of the Act if the country of his designation will not accept him into its territory, or fails to furnish timely notice of acceptance, or the respondent declines to designate a country. The respondent shall be advised that pursuant to section 243(h) of the Act he may apply for temporary withholding of deportation to the country or countries specified by the special inquiry officer and may be granted not more than ten days in which to submit his application.

Petitioner also argues that failure to notify an alien of his statutory right to apply for asylum violates due process. *Haitian Refugee Center v. Smith,* 676 F.2d 1023, 1038 (5th Cir.1982) (section 243(h) creates a substantive entitlement to petition the government for political asylum); *Nunez v. Boldin,* 537 F.Supp. 578 (S.D.Tex.1982), *appeal dismissed,* 692 F.2d 755 (5th Cir.1982) (failure to notify an alien of his right to apply for asylum before he is caused to deport to a country that he has designated violates due process).

■ Assuming that due process entitles an alien to notice of his right to apply for asylum, we do not find in these circumstances that due process has been violated. The error in this case, if any, lies in the timing of the notice, because the immigration judge notified Minwalla of his right to apply for asylum after the hearing. Petitioner argues that had he been advised of his right to apply for asylum before or during the deportation hearing, rather than afterwards, he would have been entitled to an advisory opinion from the Bureau of Human Rights and Humanitarian Affairs, 8 C.F.R. § 208.10(b) (1981) (effective June 1, 1980), and he would not have been subject to the additional conditions imposed upon applicants who file asylum petitions after the completion of a deportation proceeding by 8 C.F.R. § 208.11 (1981). These conditions are that the petitioner reasonably explain his failure to apply for relief during the deportation proceeding and that he establish a prima facie case of eligibility before he is granted a hearing. *Rejaie v. INS,* 691 F.2d 139, 142 (3d Cir.1982).

Minwalla has not shown that he has been prejudiced by his inability to obtain a hearing. He has not established a prima facie case for relief despite several opportunities to do so in his initial application, in his motion to the Board, and in his additional allegations on appeal.

Minwalla also contends that the INS's failure to act on his application for asylum violated due process. The application was filed with the district director on August 25, 1979, after the conclusion of the depor-

tation hearing on April 18, 1978, but before the immigration judge issued his decision on March 20, 1980. The judge's order did not mention the asylum application, and the district director never acted on it.

■ This court has no jurisdiction to review the district director's and immigration judge's nonaction on Minwalla's application. The provisions of 8 U.S.C. § 1105a(a) grant the courts of appeals exclusive jurisdiction over judicial review of all final orders of deportation made pursuant to administrative proceedings conducted under 8 U.S.C. § 1252(b). *Torabpour v. INS,* 694 F.2d 1119, 1121 (8th Cir.1982). Because the immigration judge never issued a decision in this case, no final order exists, and, therefore, we have no jurisdiction. The district director's actions are not reviewable because they do not fall within the parameters of section 1105a(a). *Id.* Moreover, the Board's decision denying Minwalla's motion to reopen the proceedings considered the asylum claim and found it to be non-meritorious.

■ Minwalla alleges that the Board abused its discretion in denying his motion to reopen the proceedings to allow him to apply for asylum. The Board denied petitioner's motion on the ground that he failed to make a prima facie showing of eligibility for asylum. *INS v. Jong Ha Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam), held that a motion to reopen deportation proceedings to reconsider a Section 244 claim of extreme hardship must establish a prima facie case of eligibility for relief. Motions to reopen deportation proceedings to apply for asylum are also subject to this requirement. *Rejaie v. INS,* 691 F.2d 139 at 142; *MacCaud v. INS,* 500 F.2d 355, 359–60 (2d Cir.1974). *Cf. Aiyadurai v. INS,* 683 F.2d 1195, 1199 (8th Cir.1982) (prima facie case must be established for Section 245(c)(2) relief, adjustment of status).

■ We hold that the Board did not abuse its discretion in finding that Minwalla's allegations did not establish a prima facie case of persecution. The pertinent

allegations are that Pakistan has established a non-secular state, that the Zoroastrians have been persecuted in the past, that he will be required to carry a national identity card, that because he has not applied for such a card he is subject to criminal prosecution, that he will be denied the opportunity to hold a government job or political office because of his religion, and that he will be deprived of his livelihood because he has not worked as an electrical engineer since he graduated from college eight years ago and he cannot practice Western law in Pakistan.

These allegations do not establish a well founded fear of persecution.[2] Persecution requires a showing of a threat to one's life or freedom. *McMullen v. INS,* 658 F.2d 1312, 1315 (9th Cir.1981). Mere economic detriment is not sufficient. *Cheng Kai Fu v. INS,* 386 F.2d 750, 753 (2d Cir.1967), *cert. denied,* 390 U.S. 1003, 88 S.Ct. 1247, 20 L.Ed.2d 104 (1968). *Cf. Kovac v. INS,* 407 F.2d 102, 107 (9th Cir.1969) (substantial economic detriment); *Berdo v. INS,* 432 F.2d 824, 847 (6th Cir.1970) (substantial economic disadvantage).

The requirement that Minwalla carry a national identity card, indicating his religion, does not alone establish a substantial curtailment of his freedom. Minwalla has also failed to establish a substantial economic disadvantage, because he has not alleged that he will be deprived of the opportunity for private sector employment as an electrical engineer.

Minwalla finally argues that the Board abused its discretion in refusing to reopen the proceedings to reconsider his claim of extreme hardship. The immigration judge issued a well-reasoned opinion, and this opinion was reconsidered by the Board taking into account Minwalla's new allegations. It held that even if the petitioner could not practice law or hold

government office because of his Western legal training and his religion, he could still obtain a non-governmental job as an electrical engineer and would be psychologically supported by the presence of his family.

The Board's judgment, that the new allegations do not constitute sufficient evidence to reconsider its opinion, does not appear to be erroneous, especially in view of the limited scope of appellate review articulated in *INS v. Jong Ha Wang,* 450 U.S. at 144–46, 101 S.Ct. at 1031–32, and the Court's approval of the Board's "narrow interpretation" of "extreme hardship." *Id.*

Affirmed.

---

2. In denying petitioner's motion, the Board relied on *Matter of Dunar,* 14 I & N Dec. 310, 318–19 (BIA 1973), that held an alien must establish a "clear probability of persecution." This burden was rejected as too onerous for assessing claims of persecution in light of the amendments to Section 243(h) by the Refugee Act of 1980. *Stevic v. Sava,* 678 F.2d 401 (2d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983). We do not find it necessary to decide what standard of proof is appropriate since even under the less stringent standard articulated in *Sava,* the petitioner has failed to establish a prima facie case.