—————————

No. 95-1062

—————————

Ngwando Zele Nyonzele,          *
                                *
        Petitioner-Appellant,   *  Petition for Judicial Review
                                *  of an Order of the Board of
    v.                          *  Immigration Appeals.
                                *
Immigration and Naturalization  *
Service,                        *
                          *
        Respondent-Appellee.    *


—————————

Submitted:  October 16, 1995

Filed:  May 14, 1996
—————————

Before FAGG, BOWMAN, and HANSEN, Circuit Judges.
—————————

HANSEN, Circuit Judge.

Ngwando Zele Nyonzele, a citizen of Zaire, petitions for judicial review of the decision of the Board of Immigration Appeals (BIA) finding him deportable and denying his applications for discretionary relief. Nyonzele concedes that he is deportable but contends that he is entitled to discretionary relief in the form of (1) a waiver under 8 U.S.C. § 1186a(c)(4) of the joint petition requirement for seeking permanent resident status, (2) a grant of asylum, or (3) the privilege of voluntary departure in lieu of deportation. We conclude that substantial evidence on the whole record supports the BIA's denial of discretionary relief.

## I. BACKGROUND

In May 1986, Nyonzele, a pilot for the Zairian air force, entered the United States for the purpose of receiving technical training offered to foreign military personnel. Rather than return to Zaire as ordered upon a visit from a Zairian military attache in December 1986, he fled to Texas and later moved to Sioux City, Iowa. On August 4, 1989, Nyonzele married a United States citizen, Betty King, whom he met through a dating service. On the basis of this marriage, Nyonzele obtained lawful permanent resident status on a conditional basis as of January 11, 1990. See 8 U.S.C. § 1186a(a) (popularly referred to as Section 216 of the Immigration Marriage Fraud Amendments).

To remove the condition and obtain complete lawful permanent resident status, Nyonzele and his wife were required to file a joint petition with the Immigration and Naturalization Service (INS) and appear together for a personal interview approximately two years after the date when he obtained the conditional status. See 8 U.S.C. §§ 1186a(c)(1) and 1186a(d)(2). However, Nyonzele's marriage ended in divorce on May 2, 1990, well before the time period when a joint petition to remove the condition from his resident status could be filed. Thus, he sought to avoid the joint petition requirement by applying for a "hardship waiver." 8 U.S.C. § 1186a(c)(4). Had it been granted, this waiver would have allowed Nyonzele to seek permanent resident status without fulfilling the joint petition requirement if, among other things, he could demonstrate that he entered into his "qualifying marriage . . . in good faith." Id.

Nyonzele's waiver application prompted a personal interview with an INS examiner, who tape-recorded the interview. After the interview, the INS district director denied Nyonzele's request for a hardship waiver of the joint petition requirement and terminated

2

his conditional permanent resident status. The INS then initiated deportation proceedings against Nyonzele.

At the deportation proceedings, Nyonzele requested review of the district director's termination of his conditional permanent resident status, as permitted by 8 C.F.R. § 216.5(f), contending that the district director abused his discretion by determining that Nyonzele had not entered into his marriage in good faith. Nyonzele also submitted an application for asylum, alleging a well-founded fear of persecution on account of political views. Alternatively, he requested the privilege of voluntary departure in lieu of deportation. Following a hearing, the Immigration Judge (IJ) concluded that Nyonzele was deportable as charged and denied all claims for discretionary relief.

In his administrative appeal, the BIA granted Nyonzele another hearing but ultimately dismissed the appeal, affirming the decision of the IJ. In a written opinion, the BIA reasoned that even crediting Nyonzele's testimony, he was not entitled to a hardship waiver of the joint petition requirement because he failed to demonstrate a good faith qualifying marriage. The BIA also determined that crediting Nyonzele's testimony concerning his request for asylum, he failed to demonstrate a well-founded fear of persecution. Finally, the BIA concluded that Nyonzele had abandoned his claim for voluntary departure. Nyonzele seeks judicial review.

## II. DISCUSSION

This court has jurisdiction to review "all final orders of deportation," and "the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive." 8 U.S.C. § 1105a(a)(7). Our review of final orders of deportation pursuant to 8 U.S.C. § 1105a(a) includes "all determinations made during and

incident to the administrative proceeding . . . and reviewable together by the [BIA]," Foti v. INS, 375 U.S. 217, 229 (1963), and "all matters on which the validity of the final order is contingent," INS v. Chadha, 462 U.S. 919, 938 (1983) (internal quotations omitted).

In this case, we are not asked to review the determination that Nyonzele is deportable; instead, we are asked to review the denial of a hardship waiver, the denial of asylum, and the denial of voluntary departure. The BIA's denial of Nyonzele's application for asylum and his request for voluntary departure were "determinations made during and incident to the administrative proceeding," Foti 375 U.S. at 229, and thus, we have jurisdiction to review them as part of the final order of deportation. The hardship waiver is in a slightly different posture as it was initially denied by the district director, not during deportation proceedings. The district director's denial of a hardship waiver is not itself appealable. 8 C.F.R. § 216.5(f). See Torabpour v. INS, 694 F.2d 1119, 1121 & n.8 (8th Cir. 1982) (holding no jurisdiction to review district director's decision to deny a stay of deportation because "those decisions do not fit within the parameters of section 1105a(a)"). Nevertheless, "[an] alien may seek review of the denial of a hardship waiver in deportation proceedings," 8 C.F.R. § 216.5(f), as did Nyonzele. Because the BIA reviewed the waiver claim during the deportation proceedings, that decision is reviewable in this court.

Each of Nyonzele's requests for relief is a matter statutorily vested in the discretion of the Attorney General; therefore, our review is limited to determining whether there has been an abuse of discretion. See 8 U.S.C. § 1186a(c)(4) (leaving to Attorney General's discretion the determination of whether to remove the conditional basis for permanent residence absent a joint petition); 8 U.S.C. § 1158(a) (leaving to Attorney General's discretion the determination of whether to grant asylum); 8 U.S.C. § 1254(e)

4

(leaving to Attorney General's discretion the determination of whether to grant voluntary departure). "An abuse of discretion occurs if a decision was without rational explanation, departs from established policies, or invidiously discriminates against a particular race or group." Khalaj v. Cole, 46 F.3d 828, 832 (8th Cir. 1995). An abuse of discretion also occurs where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim. Barragan-Verduzco v. INS, 777 F.2d 424, 425 (8th Cir. 1985).

## A. Hardship Waiver under § 1186a(c)(4)

An alien may obtain lawful permanent resident status on a conditional basis by marrying a United States citizen. 8 U.S.C. 1186a(a)(1). See Velazquez v. INS, 876 F. Supp. 1071, 1075-76 (D. Minn. 1995) (offering an overview of the operation of § 1186a). The conditional basis of this status may be removed if the alien and citizen spouse file a timely joint petition for removal of the condition and appear together for a personal interview. 8 U.S.C. § 1186a(c)(1). When no timely joint petition is filed,[1] the Attorney General must terminate the permanent resident status of the alien on the two-year anniversary of its receipt. 8 U.S.C. § 1186a(c)(2). If the alien and citizen spouse separate within the first two years of marriage, preventing the alien from fulfilling the timely joint petition requirement, the alien may seek discretionary removal of the condition through a "hardship waiver," provided the alien can demonstrate, inter alia, that "the

---

[1]A petition to remove the conditional permanent resident status of the alien is timely if filed within 90 days prior to the two-year anniversary of the alien having obtained the conditional status. 8 U.S.C. § 1186a(d)(2).

qualifying marriage was entered into in good faith." 8 U.S.C. § 1186a(c)(4).[2]

To determine whether an alien entered into marriage in good faith, the INS considers the degree of commitment to the marriage by both parties, including any documentation concerning their combined financial assets and liabilities, the length of time during which they cohabited after the marriage and after the alien obtained conditional permanent resident status, and any other relevant evidence. 8 C.F.R. § 216.5(e)(2). Section 1186a(c)(4) explicitly provides, "The determination of what evidence is credible and the weight to be given that evidence shall be within

_____

[2]A "hardship waiver" permits removal of the conditional status in three circumstances:

> The Attorney General, in the Attorney General's discretion, may remove the conditional basis of the permanent resident status for an alien who fails to meet the requirements of paragraph (1) [a timely joint petition and interview] if the alien demonstrates that --

> (A) extreme hardship would result if such alien is deported,

> (B) the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through death of the spouse) and the alien was not at fault for failing to meet the requirements of [a timely joint petition and interview], or

> (C) the qualifying marriage was entered into in good faith by the alien spouse and during the marriage the alien spouse . . . was battered by or was the subject of extreme cruelty perpetrated by his or her spouse . . . and the alien was not at fault in failing to meet the requirements of [a timely joint petition and interview]. . . .

8 U.S.C. § 1186a(c)(4).

the sole discretion of the Attorney General."  8 U.S.C. § 1186a(c)(4).
Once the alien demonstrates that he is statutorily eligible for the waiver
by showing that the marriage was entered into in good faith, the decision
of whether to grant a hardship waiver of the joint petition requirement is
also expressly committed to the discretion of the Attorney General. Id.

Here, the BIA held a hearing and issued a 17-page written opinion
discussing the evidence and explaining its decision to dismiss the appeal.
In determining that Nyonzele had not entered into his marriage in good
faith, the BIA considered and gave great weight to Nyonzele's own statement
concerning his intent at the time he entered into the marriage.  During the
interview regarding his waiver application, during which he was represented
by counsel and indicated that he could speak and understand English,
Nyonzele stated that he married in order to stay in the United States.  At
the BIA hearing, Nyonzele tried to explain the statement, asserting that
he could not understand English very well, that substantial portions of the
interview tape were unintelligible, and that he did not realize he could
tell the examiner he was having difficulty understanding her, all of which
the BIA found to be without merit.  Nyonzele did not dispute the accuracy
of the tape transcription, only its completeness.

The BIA also considered the degree of commitment to the marriage,
noting the chronology of the courtship, marriage, and divorce, which,
considered in its entirety, lasted less than one year.  In April 1989,
Nyonzele met Betty King through a dating service.  He began writing letters
to her in Galesburg, Illinois. After about four visits, she moved to Sioux
City, Iowa, to live with Nyonzele and found employment there.  They married
on August 4, 1989.

On January 11, 1990, following an interview with Nyonzele and his
wife, the INS approved Nyonzele's application for conditional

permanent resident status based upon the marriage. Nyonzele testified that after he and his wife returned from the interview, she became hostile toward him and began to change from a "nice lady" into a drug user who wanted to kill him. (Jt. App. at 194.) Nyonzele presented a partially written letter dated January 16, 1990, in which his wife indicated an intent to poison him. He testified that a few days later, she threatened him with a knife and tried to poison him by putting bleach on his toothbrush. He tried to get his wife to see a psychiatrist but she refused, and on January 24, 1990, he moved out and filed for divorce. His wife continued to harass him, leaving threatening and prejudicial messages on his answering machine, and he believed she once put sugar in the gas tank of his car so it would not be operable. The BIA found it significant that this "nice lady" began exhibiting hostile behavior on the very day Nyonzele obtained conditional permanent resident status and that he filed for divorce on January 24, 1990, only two weeks after obtaining this immigration benefit.

The BIA also considered Nyonzele's evidence of their shared life. Nyonzele testified that they shared a bank account, shared living expenses, and bought household furnishings together. However, the BIA noted that Nyonzele offered very little evidence of a shared life. Nyonzele submitted a lease agreement reflecting that his wife and her daughter were living with him, and two deposit slips from a joint account. One of the deposit slips the BIA found to be illegible and post-dates the filing of the petition for conditional permanent residence status. The other is dated before but close in time to the filing of the petition.

Nyonzele contends that the BIA failed to consider all of his evidence of a shared life with his wife, arguing that in spite of his admission that he married to stay in the United States, he also married intending to spend his life with his wife. Our review of the record, however, convinces us that the BIA did not overlook or

8

distort any significant evidence.  Rather, we believe that Nyonzele is in reality seeking to have us reweigh the evidence concerning their shared life.  We are not at liberty to reweigh the evidence.  The governing statute expressly vests the "sole discretion" for determining the weight of the evidence with the Attorney General.  8 U.S.C. § 1186a(c)(4).

Nyonzele also contends that the BIA abused its discretion in the good faith determination by considering unconstitutional factors, consisting of "private" marital matters such as the difference in age and socioeconomic backgrounds between him and his wife.  This contention is without merit.  The statute authorizes consideration of "any credible evidence relevant to the application."  8 U.S.C. § 1186a(c)(4).  In this case, Nyonzele's intention at the time of the marriage was crucial to determining whether he was eligible for a waiver of the joint petition requirement, and therefore, the factors relating to his marital relationship that he claims to be private were relevant to the waiver application and were properly considered.  In any event, it is clear that the BIA did not consider the factors of which Nyonzele complains to the exclusion of all other evidence but found them to be "valid investigative indicators of possibly fraudulent marriages."  (Petitioner's Addend. at 12.)  The BIA properly considered all of the evidence rather than focusing solely on Nyonzele's own statement of his intent and did not consider any unconstitutional factors.  Again, we stress that we cannot dictate the weight to be given the evidence.  After carefully reviewing the administrative record, we conclude that the BIA's findings of fact are supported by substantial evidence and are therefore conclusive.  The BIA did not abuse its discretion by denying Nyonzele a hardship waiver on the basis that he did not demonstrate a good faith marriage.

9

## B.  Asylum

A deportable alien is eligible to seek asylum at the discretion of the Attorney General upon proof of a "`well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'"  Hamzehi v. INS, 64 F.3d 1240, 1242 (8th Cir. 1995) (quoting 8 U.S.C. § 1101(a)(42)(A)); 8 U.S.C. § 1158(a).  "A well-founded fear is one that is both `subjectively genuine and objectively reasonable.'"  Id. (quoting Ghasemimehr v. INS, 7 F.3d 1389, 1390 (8th Cir. 1993)).  Subjectively, the alien must demonstrate with credible evidence that he genuinely fears persecution; objectively, the alien must demonstrate through credible, direct, and specific evidence that a reasonable person in his position would fear persecution.  Ghasemimehr, 7 F.3d at 1390.  The BIA's decision that an alien is "not eligible for asylum must be upheld if `supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"  INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)).  To overturn a finding that an alien is not eligible for asylum, the alien must meet the heavy burden of demonstrating that the "evidence `was so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution.'"  Hamzehi, 64 F.3d at 1242 (quoting Elias-Zacarias, 502 U.S. at 484).

On March 6, 1992, after the INS denied Nyonzele's request for a waiver, he filed an application for asylum, asserting that he feared persecution because he had refused to return to Zaire at the request of the military attache and because his family has been singled out for persecution based upon his father's political views.  At the hearing, Nyonzele testified that his father lost his employment and was sent into internal exile in 1978 for having spoken against Zaire's Mobutu government.  Nyonzele participated in political demonstrations with his father in 1978 and 1980, while he was in the air force.  Nyonzele suffered no persecution for his

10

activities, but he testified that he sought to avoid identification with his father and kept his own political views a secret.

Nyonzele continued his military service and was selected for special training in the United States. Nyonzele testified that he first became fearful of the Mobutu government in December 1986, while he was participating in special air force training at Mather Air Force Base in California. He received a phone call from his uncle, who worked in the Zairian Defense Ministry and allegedly had connections to Zaire's secret police, telling him that he was about to be returned home and warning him not to do so. Nyonzele testified that his uncle warned him that he would have the same future as his father because he was educated and because of his father's political problems. Two days later a high ranking military attache flew from Washington D.C. to California and ordered Nyonzele to return to Zaire in three days time. Fearing for his life, Nyonzele fled to Texas and did not return to Zaire as ordered.

On July 2, 1991, approximately five years after deserting from the military, Nyonzele received word from his uncle that his father had been murdered by a member of the Mobutu government's secret police while returning home from a political demonstration. Nyonzele testified that his family knew the alleged gunman to be a member of the secret police. Nyonzele testified that he has had no contact with family members since this phone call.

Nyonzele also testified that other family members have suffered persecution at the hands of the Mobutu government. Nyonzele testified that his older brother, an air force pilot, died in a plane crash in 1980 with indications of sabotage. That same year, two cousins were imprisoned allegedly on political grounds. They were never brought to trial and died without explanation while confined. Nyonzele presented some general documentary evidence indicating that the Mobutu government has engaged in many human

11

nd unauthorized detention, and that its economy is stagnant due in part to official corruption.

BIA concluded that, even accepting Nyonzele's testimony a credible, the evidence as a whole well-founded fear of persecution on account of Nyonzele's political views those of his family. We conclude that this finding is supported b substantial evidence on the whole record.

We                                                                                                r
persecution                                                                                       s
promoted in the air f
in spite of his father's political
evidence of family persecution (the suspicious deaths of a brother and two occurred over a decade ago. Nyonzele has not shown "why thes rather dated events provide an objectively reasonable basis for a present [im] personally and on the basis of h[is] political opinion, . . . or on t political opinions." Hamzehi

The only relevant facts existing at the time of his militar
desertion                                                                                         s
unexpected                                                                                        s
unrelated                                                                                         A
found   at, given the many problems from which Zaire suffers, both and economic, the uncle's warning could have been based on a lac
of                                                                                                r
safety. This finding is supported by substantial evidence. Significantly, testified that his siblings suffer economic persecution, and in previous affidavit, Nyonzele indicated that if forced to return to Zaire
"My                                                                                               -
existent." (Jt. App. at 53.) Fears of economic hardship or

12

a lack of educational opportunities, however, do not establish a well-founded fear of persecution.  See Minwalla v. INS, 706 F.2d 831, 835 (8th Cir. 1983) (persecution requires a threat to life or freedom; "economic detriment is not sufficient").

The final event -- the allegation that Nyonzele's father was murdered five years after Nyonzele deserted the military -- is significant.  Acts of violence against an alien's family members may demonstrate a well-founded fear of persecution, "notwithstanding an utter lack of persecution against the petitioner [him]self."  Arriaga-Barrientos v. INS, 937 F.2d 411, 414 (9th Cir. 1991).  See Makonnen v. INS, 44 F.3d 1378, 1385-86 (8th Cir. 1995) (holding that treatment of a member of an alien's immediate family who shares similar political views and similar political activities is relevant to establishing well-founded fear).  Evidence of isolated violence, however, is not sufficient.  Arriaga-Barrientos, 937 F.2d at 414.  "Furthermore, attacks on family members do not necessarily establish a well-founded fear of persecution absent a pattern of persecution tied to the petitioner[]."  Prasad v. INS, 47 F.3d 336, 340 (9th Cir. 1995).

Here, there is no pattern of persecution linked to Nyonzele.  His father has allegedly been murdered for his political beliefs, but there is no evidence to suggest that the government has any interest in persecuting Nyonzele for his father's opinions.  Likewise, there is no evidence that any family members surviving Nyonzele's father have suffered physical persecution by the government.

Nyonzele asserts that the government will kill him upon his return to Zaire out of fear that he, the oldest of the remaining three sons, will avenge the 1991 death of his father.  No evidence in the record supports this allegation.  Furthermore, the BIA found that even accepting Nyonzele's testimony as credible, it has not been shown by credible, direct, and specific evidence that his

13

father was murdered as alleged. Nyonzele's testimony that his uncle told him of the murder relies solely on secondhand information that is uncorroborated and lacking in detail. While an alien's testimony need not always be corroborated by documentation, see Bolanos-Hernandez v. INS, 767 F.2d 1277, 1285 (9th Cir. 1985) (noting that it is unlikely that persecutors will provide victims with affidavits of their acts), yet the testimony offered must at least bear some degree of reliability. Skeletal secondhand information will not satisfy the burden to demonstrate a well-founded fear through "credible, direct, and specific evidence." Ghasemimehr, 7 F.3d at 1390. Viewing all the evidence, the BIA did not abuse its discretion by failing to give controlling weight to Nyonzele's unsupported theory that the government will kill him out of fear that he would avenge the death of his father.

Finally, the BIA concluded that the most likely source of Nyonzele's fear was his military desertion and the discipline he will face for desertion upon his return to Zaire. In his affidavit accompanying the waiver application discussed above and signed before he applied for asylum, Nyonzele states only, "If I am returned to Zaire, I will face certain discipline for desertion from the military." (Jt. App. at 53.) Fear of punishment for military desertion is insufficient to establish a well-founded fear absent evidence that the feared punishment is disproportionately severe and is based upon the alien's religious or political beliefs. See Alonzo v. INS, 915 F.2d 546, 548 (9th Cir. 1990). Such proof is lacking.

After carefully reviewing the record, we conclude that Nyonzele has not demonstrated that the evidence is "so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution." Hamzehi, 64 F.3d at 1242 (internal quotations omitted). While Nyonzele's fear may be subjectively genuine, it is not objectively reasonable. Accordingly, the BIA

14

did not abuse its dis

asylum.

## C.  Voluntary Departure

BIA concluded that Nyonzele abandoned this claim in his
appeal.  Nyonzele disagrees.  Nyonzele's notice of appeal
m for voluntary departure:

> Finally, the
> requested                                                    n
> proceed  to deny the same for want of good moral character.
>          departure to Zaire is not relief Respondent seek
> since he                                                     e
> Immigr      Judge again finds that Respondent has offered
>      usible and inconsistent testimony in support of hi
> request                                                      t
> account in support of his asylum claim, Respondent
> to                                                           e
> err          Second, even if the findings were true, they
>         ly do not rise to the level of any of the statutor
> exceptions to the finding of good moral character. . . .

(Jt. App. at 46.)  Although this statement very plainly expresses that
                                          of voluntary departure to
Zai    his intent later becomes confusing because Nyonzele states he is
                                          determination.  (<u>Id.</u>
statement then renews Nyonzele's attack on the IJ's credibility findings,
        that were made in connection with his requests for a waiver and
   asylum and were relied upon by the IJ to deny voluntary departure.  Th
notice of appeal is not a model of clarity, as Nyonzele suggests.

The  dministrative record reveals, however, that Nyonzele did not
                                          w, this clarifies the real
issues    pealed to the BIA and shows that Nyonzele failed to pursue the

15

The BIA "cannot be expected to resolve issues that the alien should have raised, but did not." Perez-Rodriquez v. INS, 3 F.3d 1074, 1080 (7th Cir. 1993). When an issue is abandoned before the BIA, it is not preserved for our review. Tejeda-Mata v. INS, 626 F.2d 721, 726 (9th Cir. 1980), cert. denied, 456 U.S. 994 (1982). See also Valadez-Salas v. INS, 721 F.2d 251, 252 (8th Cir. 1983) (citing Tejeda-Mata and holding that failure to raise a claim before the IJ or BIA precludes our review because there has been no exercise of the Attorney General's discretion to review).

### III.  CONCLUSION

Finding no abuse of discretion in the BIA's decision to deny Nyonzele's claims for discretionary relief, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

16