# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3700

_____

| | |
|---|---|
| Mushtaquddin Ahmed, Shahana Mushtaq, Owais Uddin Ahmed, Kiran Aftab Ahmed, and Bilal Uddin Ahmed, | * <br> * <br> * <br> * |
| | * Petition for Review of an |
| Petitioners, | * Order of the Board of |
| | * Immigration Appeals. |
| v. | * |
| | * |
| John Ashcroft, Attorney General, | * |
| | * |
| Respondent. | * |

_____

Submitted: November 17, 2004
Filed: January 26, 2005

_____

Before RILEY, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Mushtaquddin Ahmed and Shahana Mushtaq, husband and wife, and their three children, Kiran, Bilal, and Owais, petition for review of a final order of removal of the Board of Immigration Appeals denying their application for asylum and withholding of removal. They claim that economic discrimination against their ethnic group in Pakistan, their native country, amounts to persecution. The Immigration Judge found that they had not suffered past persecution and had not shown a reasonable fear of future persecution should they return to Pakistan. The Board of

Immigration Appeals affirmed, in all but two particulars not relevant to this appeal.[1] The Ahmeds argue that they showed a reasonable fear of economic sanctions that would amount to persecution and that the Board abused its discretion in failing to address all of their arguments. We deny review.

Ahmed is the primary petitioner for his wife Shahana and minor son Owais, but because son Bilal and daughter Kiran have attained the age of twenty one, they have each filed their own applications for asylum. The Ahmeds are members of the Mohajirs, which is the term for immigrants who left India for Pakistan in 1947, when those two countries were partitioned. Within that group, they are Biharis, an Urdu-speaking group that came from the Bihar area of India. Ahmed and Shahana both grew up in East Pakistan, where many Biharis settled after partition. In 1971, when East Pakistan became Bangladesh, Ahmed immigrated to West Pakistan, which is now known simply as "Pakistan." Shahana also immigrated to Pakistan independently. Ahmed and Shahana did not meet until both were in Pakistan. Other Biharis were not allowed to immigrate, and Ahmed testified that over 250,000 such people live in refugee camps in Bangladesh. Once in Pakistan, Ahmed was able to finish college at the University of Karachi, and Shahana obtained a master's degree there. They married in 1975. Ahmed got a job in Iraq in 1980, and later the family moved to London and then Saudi Arabia. They returned to Pakistan for a few months in 1982, but then returned to Saudi Arabia.

---

[1]The Board corrected the Immigration Judge's error of designating India, rather than Pakistan, as the country of removal. The Board also noted that the Immigration Judge, who is based in Chicago, applied Seventh Circuit precedent when he should have applied Eighth Circuit precedent for this case, which was heard in Kansas City; the Board concluded, however, that the citation of Seventh Circuit precedent was harmless error.

The Ahmed family came to the United States in 1991 on H-visas. After the visas expired, they applied for asylum in March 1998. Removal proceedings were commenced March 8, 1999, and the family conceded the charge of removability.

Ahmed admitted in his asylum application that the family left Pakistan without having experienced persecution "in blatant form." However, he contended that he has a fear of persecution based on the system of allocating government jobs in Pakistan. The jobs were allocated according to region, which Ahmed stated disadvantaged the Mohajirs, who were concentrated in Karachi, in the province of Sindh. He stated that the Mohajirs in Karachi were entitled to only three or four percent of the government jobs. He later testified that the job quota system was controlled by the person's domicile; he said nothing about ethnicity directly determining whether a person was eligible for jobs.

The Board found that the Ahmeds had not shown anything more than fear of economic hardship or lack of educational opportunities, which was not sufficient to constitute persecution. In re Ahmed, No. A76 857 729 (B.I.A. Oct. 8, 2003) (citing Nyonzele v. INS, 83 F.3d 975 (8th Cir. 1996), and Minwalla v. INS, 706 F.2d 831, 835 (8th Cir. 1983)). On petition for review, the Ahmeds claim that the Board abused its discretion in failing to consider all their arguments and that it reached the wrong conclusion in finding that they had not established a well-founded fear of economic persecution.

We review the Board's factual determinations under the substantial evidence standard. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). We must uphold such determinations "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (2000). We review the Board's legal conclusions de novo, but we defer to the agency's interpretation of the law it administers where appropriate under administrative law principles. Fisher v. INS, 291 F.3d 491, 496 (8th Cir. 2002).

3

The Attorney General is authorized to grant asylum to "refugees," 8 U.S.C. § 1158(b)(1) (2000), which includes people who are outside of their country and who are unable or unwilling to return because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A) (2000). The Ahmed family contend that they have a well-founded fear of economic persecution in Pakistan on account of their membership in the Mohajir and Bihari ethnic groups.

Economic discrimination has been held to rise to the level of persecution if such sanctions are sufficiently harsh to constitute a threat to life or freedom. See INS v. Stevic, 467 U.S. 407, 418 (1984) (quoting In re Dunar, 14 I&N Dec. 310, 320 (B.I.A. 1973)). However, in Nyonzele v. INS, 83 F.3d 975, 982-83 (8th Cir. 1996), we held that the petitioner had not established a well-founded fear of persecution by showing economic discrimination. The petitioner testified that his father had lost his job and was later murdered because of his political beliefs, and the petitioner had been warned by an uncle that if he returned to his native country, he would have the same future as his father. The petitioner said that if he were deported, "My opportunities for advanced education and a good job will be non-existent." Id. at 983. The Board concluded that, even accepting the petitioner's testimony as true, there was insufficient evidence of persecution. We upheld the Board's decision, stating, "Fears of economic hardship or a lack of educational opportunities, however, do not establish a well-founded fear of persecution." Id.

In Minwalla v. INS, 706 F.2d 831, 834-35 (8th Cir. 1983), the petitioner was a Pakistanian Zoroastrian. He testified that if he returned to Pakistan, he would be denied the right to hold a government job or political office because of his religion. We held that denial of public sector employment was not enough to establish persecution where the petitioner had not shown he would be deprived of the opportunity for private sector employment. Id. at 835.

4

Here, the evidence presented by Ahmed was far less compelling than that in Nyonzele and somewhat less than that in Minwalla. Ahmed testified that government employment was allocated by domicile, in such a way as to limit the numbers of available jobs in the Karachi area, which was where many Mohajirs lived. He did not say that Mohajirs were altogether disqualified from such work, as the petitioner in Minwalla claimed Zoroastrians were. 706 F.2d at 835. Nor did Ahmed say what proportion of the overall population lived in the area that was limited to three to four per cent of the government jobs. Consequently, we cannot assess whether the allocation of jobs was even disproportionate to the population in various domiciles. We certainly cannot say that the decision to allocate jobs according to geographic area was innately persecutory of any particular group that lives within the geographic areas. As in Minwalla, the evidence here leaves open the possibility of private employment. See id. Ahmed did not testify that he had ever lost a job because of his ethnicity. Substantial evidence supported the conclusion that the Ahmeds had not shown a well-founded fear of economic persecution on account of ethnicity.

The Ahmeds argue that the Board made a factual error in stating that Ahmed and Shahana were able to finish their education after they arrived in Pakistan following the 1971 civil unrest in Bangladesh. Ahmed stated that he and his wife both grew up in Bangladesh. In his asylum application, Ahmed stated that he attended college in Bangladesh, but the civil unrest broke out "[b]efore I could graduate from college." He testified that he fled to West Pakistan during the civil unrest, that his wife also moved to West Pakistan, and that both finished degrees in Karachi, Pakistan. Substantial evidence supports the Board's finding that both spouses finished their education in Pakistan and that this occurred after they fled Bangladesh in 1971.

The Ahmeds contended at oral argument that they had shown a reasonable fear of economic persecution because there are many Biharis still in refugee camps in Bangladesh. Ahmed testified that he escaped being consigned to a refugee camp by

fleeing to Pakistan. The designated country of removal is Pakistan, not Bangladesh, so we do not see the relevance of the plight of the Biharis in Bangladesh to the Ahmeds' claim.

The Ahmeds also claim that the Board abused its discretion in failing to address all their arguments in its written opinion. First, they contend that the Immigration Judge improperly required corroborating evidence, but the Immigration Judge and the Board simply held that Ahmed's testimony did not describe a well-founded fear of treatment amounting to economic persecution, without regard to whether the testimony was corroborated. Next, Kiran contends that she showed she would be subject to persecution because she would be subject to the Hudood ordinances, which are Pakistani laws based on Islamic law and which include severe punishment for morals offenses. The Immigration Judge observed that the Hudood ordinances are generally applicable Pakistani laws, and Kiran failed to show the laws would apply to her with any special rigor on account of her ethnicity or social group or that she would be unable to avoid running afoul of them. In order to establish eligibility for asylum, Kiran had to prove that she had a well-founded fear of persecution on account of one of the five reasons listed in § 1101(a)(42); she failed to link her fear of ill treatment to one of those reasons or to show that she had anything more to fear from the Hudood laws than other Pakistanis because of those reasons. Moreover, the Board specifically addressed this argument on appeal. The Ahmeds do not point to any meritorious argument overlooked by the Board, and so there is no basis for review.

Because the petitioners were unable to satisfy the burden of proof for eligibility for asylum, it follows that they cannot satisfy the higher standards required for withholding of removal. See Fisher, 291 F.3d at 498.

We deny review.

_____