GREGORY, Circuit Judge,
concurring in part and dissenting in part:
Petitioner Rosemary Mirisawo came to the United States in order to pursue a job; she had no illusions or desire that her residency here would become permanent. Rather, she accepted a G-5 visa and, for six years, worked as a household domestic in this country. In preparation for her eventual return to Zimbabwe, Mirisawo purchased a home in her native land. Her disabled brother and some of her children inhabited the house while she remained abroad. However, in 2005, the home, the only one she had ever owned, was destroyed by the Mugabe government in a show of force against the Movement for Democratic Change opposition. Therefore, now that Mirisawo’s visa has not been renewed and she lacks status in this country, she has no shelter to which she may return. Given that destruction, Mirisawo has established past economic persecution and thus qualifies as a refugee for asylum purposes. For this reason, I dissent.**
I.
In order to be considered eligible for asylum under the Immigration and Nation *401 ality Act, a petitioner must show that he or she is a refugee, someone who, because of past persecution or a reasonable fear of future persecution, cannot return to his or her home country. 8 U.S.C. § 1101(a)(42)(A) (2006). In determining whether a petitioner is a refugee, we look both to the harm he or she has suffered in the past as well as the situation to which he or she will have to return if not granted asylum. Persecution is “not limited to physical harm or threats of physical harm and may include threats of economic harm, so long as the threats, if carried out, would be of sufficient severity that they amount to past persecution.” In re T-Z- 24 I. & N. Dec. 163, 169 (B.I.A.2007). Economic persecution may qualify as past persecution if it constitutes either the “deliberate deprivation of basic necessities” or the “deliberate imposition of severe economic disadvantage.” Id. at 171. Of the basic necessities of human life, shelter is certainly included. Along with food and water, housing is one of the components of fundamental human existence. Thus, its intentional deprivation constitutes past persecution. Accord, Li v. Attorney General, 400 F.3d 157, 168 (3d Cir.2005) (holding economic persecution may involve “the deprivation of liberty, food, housing, employment, and other essentials of life” (citation and internal quotation marks omitted)).
The majority goes further, announcing for the first time that in this Circuit, for economic persecution to be shown, it must “be so severe that it threatens the life or freedom of the applicant,” citing Li v. Gonzales, 405 F.3d 171 (4th Cir.2005), as support. Maj. Op. at 396. In Li, we held that “economic penalties ‘rise to the level of persecution’ only if such ‘sanctions are sufficiently harsh to constitute a threat to life or freedom.’ ” 405 F.3d at 177 (quoting Ahmed v. Ashcroft, 396 F.3d 1011, 1012 (8th Cir.2005); see also Chen v. INS, 195 F.3d 198, 204 (4th Cir.1999) (mentioning that for economic harm to rise to the level of persecution, it must “at least” be substantial)). The majority’s standard for economic persecution goes beyond our prior holding in Li where we required that the economic harm “constitute a threat,” not that the harm itself actually and currently threaten the individual’s life or liberty. Maj. Op at 396. Further, the majority’s requirement of a “severe” deprivation of basic necessities goes beyond any of our prior precedent which required only a “deliberate deprivation” of such essentials. Therefore, I find scant support for the majority’s new standard under our precedent and, in any case, would not decide this issue because under either Li or the majority’s standard, the destruction of Mirisawo’s home constitutes past persecution.
In the majority’s opinion, however, Mirisawo cannot claim the deprivation of her home simply because she never lived there in the past. See Maj. Op. at 397 (“At the time of the government’s partial destruction of her house, Mirisawo had never lived in the house and was living and working in the United States as a live-in housekeeper.”). Furthermore, in their view, because Mirisawo cannot demonstrate that she would ever work as anything other than a live-in maid, she cannot show that she would ever have lived in the house. Id. at 398 (“Mirisawo spent her career employed as a housekeeper, and the destruction of her house in no way interfered with her ability to continue in this type of employment.”). In essence, for the majority, Mirisawo is considered a captive of her previous vocation and is unable to show that she has any other path open to her, even when there was no evidence that she would continue to work as a live-in maid were she to return to Zimbabwe. Indeed, the majority assumes that Mirisawo is satisfied with her condition and is in fact benefitted by it *402 because she will presumptively have a roof over her head. See Id. at 397 (“In this case, the record supports the conclusion that the destruction of Mirisawo’s house in no way interfered with her ability to provide housing for herself’). The majority thus concludes that Mirisawo suffered no past economic persecution because she did not depend on the home that she purchased for shelter, rental, or income.
A.
There are two fundamental flaws in the majority’s argument, one factual and one conceptual, both demonstrating that persecution was shown here. First, the majority unwarrantedly assumes that Mirisawo was not planning on returning to the home she purchased. Indeed, it assumes that Mirisawo was forever consigned to her role as a live-in domestic, continually inhabiting the homes and lives of other people, unable to forge her own way. See Maj. Op. at 397 (“Nor is it likely that Mirisawo will ever need to live in the house, as she will likely continue to be employed as a live-in housekeeper if she returns to Zimbabwe.”). Yet, there is direct evidence in the record to the contrary showing that Mirisawo was actively preparing for her return home. First and foremost, the record is completely devoid of evidence that Mirisawo had any intention, or indeed any desire, to remain in the United States permanently. This is not a case where a petitioner has applied for asylum merely because his or her application for permanent residency had been declined. Mirisawo never applied for any type of permanent status in the United States. In fact, in 2002, the first and only time that Mirisawo returned to Zimbabwe during her time living in the United States, she purchased a home. Further, there was no evidence presented that Mirisawo had any particular plans upon her return home to work as a domestic. At bottom, the majority’s error is to assume that Mirisawo preferred to live in her employers’ homes, when the evidence points to the fact that at the fist chance she had, she purchased a home of her own that would be available for her return.
B.
The second flaw in the majority’s argument is more conceptual. It is erroneous to conclude that as a matter of law an individual who has not lived in his home cannot make out a claim of economic persecution. The logical flaw of the majority’s opinion is quite clear in the following example. Imagine an alien in the United States who has secured a temporary work visa and who has no interest or reason to seek permanent resident status. As that person prepares to return home, he contacts a friend in his home country and asks him to dig a well at his house. In return, the alien will send him $1,000 via Western Union. The friend agrees, and within two weeks, the well is completed and the money transferred. Unfortunately, before the alien returns home, agents of the government come to his house and pour poison in his well, suspecting that he sympathizes with the opposition party, sup porters of which live in his neighborhood. In response, the alien files an asylum claim in the United States, claiming past economic persecution which deprives him of the necessities of life: water. Confronted with that case, would this Court hold that merely because the alien had yet to drink from the well, he was not persecuted? That result is counter to logic and counter to law.
So too here the majority’s decision is without basis in law or reason. Mirisawo was able to buy the house with her earnings in the United States. Like so many temporary workers, she used the money *403 she earned abroad to provide for her future at home. Unfortunately Mirisawo was never able to enjoy the fruits of her labors because the house was bulldozed before she inhabited it. Yet, merely from her inability to occupy the house, how can we assume that Mirisawo never intended to live there in the first place? Fundamentally, it is without support in the law to hold that the destruction of the most significant investment a person has ever purchased, which is also a necessity of life, does not constitute persecution.
II.
The majority opinion evinces some knowledge of a maid’s life, but betrays no understanding of her dream. I must dissent.

 I concur with the majority that Mirisawo has not established a reason able fear of future persecution.