# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1940
_____

Primitivo Alavez-Hernandez,
also known as Primitivo Alvaez-Hernandez,
also known as Jose Ortiz;
Ines Ruiz-Cruz,
also known as Maritza Solis-Padilla

*Petitioner*s

v.

Eric H. Holder, Jr., Attorney General
of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 17, 2012
Filed: May 8, 2013

_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.

_____

BYE, Circuit Judge.

Primitivo Alavez-Hernandez and Ines Ruiz-Cruz, married Mexican citizens, petition for review of the denial of their applications for withholding of removal. Once placed into removal proceedings, each conceded removability but applied for withholding of removal. The immigration judge (IJ) denied the applications. The Bureau of Immigration Appeals (BIA) dismissed Primitivo and Ines's appeal of the IJ's denial. We deny review.

I

In 2006, the government placed Primitivo and Ines into removal proceedings. Each conceded removability, but applied for withholding of removal.[1] Primitivo and Ines both claimed they had been persecuted in Mexico for their religion, nationality, and membership in a particular social group. They specifically alleged Catholics in their home village of San Miguel Aloapam (the Village) had persecuted them, believing they and their families were Evangelical Christians.

After seeing Primitivo's and Ines's fathers associating with Evangelical Christians, Catholic villagers began threatening and attacking members of Primitivo's and Ines's families in the streets of the Village. Those victims who had been unable to escape the attacks suffered bruises and scratches or having their clothing torn away. Pet'rs' App. at 21-23, 59, 101. The local police refused to accept Ines's family's attempts to report the attacks. Village Catholics also deprived Primitivo's and Ines's families of access to basic necessities. They barred the families from buying supplies in Village stores or using the local buses to travel to buy supplies. Hr'g Tr. 42, 84-85. The Catholic villagers also arranged with the local authorities to cut off water and power to the families' homes.[2]

---

[1]Neither applied for asylum.

[2]Both Primitivo's and Ines's families lived on small ranches near the Village on which they grew crops and raised animals primarily for their own consumption.

Both families eventually left the Village. Primitivo's family relocated directly to Oaxaca City. Ines's family moved first to their ranch, remaining there for at least five months even though the ranch also lacked access to water and power. Hr'g Tr. 87-88. Ines's family then relocated to Oaxaca City. After the families left the Village, their land was seized and put to other uses. Hr'g Tr. 44-45, 107.

Primitivo and Ines also claimed their families' ethnicity had caused them to live in poverty in Oaxaca City. Both families are Zapotec and communicated primarily in Zapoteca, speaking very little Spanish. Their limited ability to communicate in Spanish significantly restricted their employment opportunities in Oaxaca City. Hr'g Tr. 68-69, 88. Members of the families were, however, able to obtain employment, and many continue to reside in Oaxaca City. Hr'g Tr. 59-60, 64-67, 97, 101-04.

Primitivo and Ines lived in Oaxaca City for approximately nine years. They both joined and eventually married in an Evangelical Christian church there. No one attacked Primitivo and Ines in Oaxaca City or interfered with their attempts to worship as Evangelical Christians.

In 1997, Primitivo entered the United States without inspection in search of work. Ines and the couple's firstborn followed. They currently have four children, one of whom has a respiratory condition which requires treatment with medication.

At the evidentiary hearing, the IJ heard the testimony of Primitivo, Ines, and their expert witness, all of whom the IJ found to be credible. According to the expert witness, Catholics control large sections of Mexico and discriminate against Evangelical Christians, who are in the minority. Hr'g Tr. 121. In less populated areas, the Catholic majority effectively has the authority to charge and kill Evangelical Christians. Hr'g Tr. 121. In the larger cities like Oaxaca City, religious

---

Hr'g Tr. 39-40, 87. Ines's family also had a small home in the Village. Hr'g Tr. 87.

discrimination exists but is not as severe and Evangelical Christians can practice their religion in large, well-established churches. Hr'g Tr. 123-24.

The IJ denied the applications for withholding of removal, concluding neither the attacks in the Village nor the economic hardship in Oaxaca City had been severe enough to constitute persecution. The IJ also concluded the couple could avoid any threat of future persecution by relocating to Oaxaca City. Primitivo and Ines appealed. The BIA agreed with the IJ's conclusions but also considered the other detrimental conditions in the Village, which it concluded had not constituted persecution either. The BIA dismissed the appeal. Primitivo and Ines petitioned for review.

II

We review a denial of an application for withholding of removal under the substantial evidence standard. Mouawad v. Gonzales, 485 F.3d 405, 412 (8th Cir. 2007) (citing Wijono v. Gonzales, 439 F.3d 868, 872 (8th Cir. 2006)). "Where, as here, the BIA adopts the IJ's decision and adds its own reasoning, we review both decisions together." Makatengkeng v. Gonzales, 495 F.3d 876, 881 (8th Cir. 2007) (quoting Quomsieh v. Gonzales, 479 F.3d 602, 605 (8th Cir. 2007)). Under the substantial evidence standard, "[t]he Board's findings of fact will be disturbed only if unsupported by substantial evidence." Ateka v. Ashcroft, 384 F.3d 954, 957 (8th Cir. 2004) (citing Negele v. Ashcroft, 368 F.3d 981, 982 (8th Cir. 2004)). "We review the Board's conclusions of law de novo, with substantial deference to its interpretations of statutes and regulations administered by the agency." Id. (citing Regalado-Garcia v. INS, 305 F.3d 784, 787 (8th Cir. 2002)). We "will reverse the decision [below] only if the record compels the conclusion that [the applicant] qualified for withholding of removal." Mouawad, 485 F.3d at 412 (citing Wijono, 439 F.3d at 872).

"To qualify for withholding of removal, an applicant must show a clear probability that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. at 411 (internal citations and quotation marks omitted). "[T]he applicant may show past persecution on the basis of one of the protected grounds listed above, thus creating a rebuttable presumption that his life or freedom would be threatened upon removal." Id. at 411-12 (citing 8 C.F.R. § 1208.16(b)(1)). In the alternative, the applicant may show "'it is more likely than not that he or she would be persecuted' upon removal based upon one of the protected grounds. . . ." Id. at 412 (quoting 8 C.F.R. § 1208.16(b)(2)).

Primitivo and Ines first contend the BIA erred in concluding the conditions in Mexico had not been severe enough to constitute past persecution. This is a question of law we review de novo. See Cubillos v. Holder, 565 F.3d 1054, 1058-59 (8th Cir. 2009) ("The BIA made a legal conclusion as to whether the record facts established persecution.").

The IJ and the BIA concluded the physical attacks in the Village had not been severe enough to rise to the level of persecution because the attacks had not been life threatening. We agree. Persecution "is an extreme concept that excludes low-level intimidation and harassment." Bracic v. Holder, 603 F.3d 1027, 1034 (8th Cir. 2010) (quoting Sholla v. Gonzales, 492 F.3d 946, 951 (8th Cir. 2007)). There is no evidence the attacks in the Village ever threatened the victims' lives. In fact, there is no evidence the attacks resulted in any injury more life threatening than bruises and scratches or the victim having his or her clothing forcibly removed.

The BIA also concluded the other detrimental conditions in the Village had not been severe enough to constitute persecution. The BIA acknowledged Primitivo and Ines had been "beaten, threatened, denied of basic services such as water and electricity, deprived of food, access to land, and housing in their hometown." Pet'rs'

Add. at 2. The BIA then noted Primitivo and Ines "however had other sources (although not steady) of income and housing (albeit not preferable) available once they moved to Oaxaca City." Pet'rs' Add. at 2. In support of its reasoning, the BIA cited Ahmed v. Ashcroft, 396 F.3d 1011, 1014 (8th Cir. 2005), for the proposition that "economic discrimination [is] not sufficiently harsh to constitute a threat to life or freedom where private employment [is] available." Pet'rs' Add. at 2. We do not read Ahmed to hold the availability of housing and employment in one place may lessen the severity of an applicant having been deprived of food, water, electricity, and access to land in another.[3] Ahmed holds merely that proof an applicant's government decided to allocate public jobs by geographic region, without more, is insufficient to establish economic persecution. Ahmed, 396 F.3d at 1013.

Notwithstanding the BIA's flawed reasoning, the record weighs against concluding the conditions in the Village were severe enough to constitute persecution. In this circuit, we require detrimental conditions be severe enough to threaten an applicant's life or freedom before they will constitute persecution. See Beck v. Mukasey, 527 F.3d 737, 740 (8th Cir. 2008) (economic restrictions can constitute persecution if severe enough to constitute a real threat to life or freedom). At the evidentiary hearing, Ines testified her family lived on their ranch for at least five months, even though the ranch lacked access to food, water, and electricity, the same basic necessities denied to them in the Village. Hr'g Tr. 87-88. The length of time Ines's family was able to live on the ranch without access to the same necessities they had been deprived of in the Village indicates the deprivation had not been severe enough to be life threatening. Nor is there any evidence being deprived of basic necessities made the attacks severe enough to be life threatening. See Ngengwe v. Mukasey, 543 F.3d 1029, 1037 (8th Cir. 2008) (finding as error the failure to consider

---

[3]Because we conclude the BIA's reasoning does not support its conclusion regarding past persecution, we need not consider the argument the BIA's reasoning erroneously conflated the analysis of past persecution with that of reasonable relocation.

the cumulative severity of alleged events) (citation omitted). Accordingly, Primitivo and Ines have not proven the conditions in the Village rose to the level of persecution, even when the conditions there are viewed together with the street attacks.

In addition, even assuming for the sake of argument Primitivo and Ines had proven they had suffered past persecution in the Village, they would still not be entitled to withholding of removal. An applicant is precluded from proving a threat of future persecution by a finding the applicant can reasonably relocate within the country to avoid it. 8 C.F.R. §§ 1208.16(b)(1)(B), 1208.16(b)(2). The BIA concluded Primitivo and Ines could avoid any future persecution in Mexico by relocating to Oaxaca City. We agree. According to Primitivo and Ines's expert's testimony, the religious discrimination in Mexico is not as severe in urban areas like Oaxaca City as it is in the Catholic dominated rural regions. Hr'g Tr. 121, 123-24. The nine years in which Primitivo and Ines were able to live in Oaxaca City without being attacked and without interference in their choice to worship as Evangelical Christians also supports this finding.

Finally, Primitivo and Ines contend relocation to Oaxaca City would not be reasonable. The BIA concluded relocation to Oaxaca City would be reasonable because the conditions there do not constitute persecution. Whether relocation is reasonable, however, is guided not by whether the applicant would face persecution at the proposed area of relocation but whether the applicant would be subject to the threat of *other* serious harm there. 8 C.F.R. § 208.16(b)(3) (emphasis added).

Primitivo and Ines argue they would suffer significant hardship in Oaxaca City because they have no savings, they would have limited employment opportunities, and they fear they would be unable to obtain needed medicine for their daughter there. The arguments regarding Primitivo and Ines's lack of savings and the limited employment opportunities in Oaxaca City are unpersuasive. The record indicates Primitivo's and Ines's families first relocated to Oaxaca City with a similar lack of

financial resources but that members of their families have since made lives for themselves and continue to reside there. Hr'g Tr. 42-43, 59-60, 88-92, 101-04. In addition, the assertion they will have limited employment opportunities is based in part on their previous experiences in Oaxaca City, when it was the inability to communicate in Spanish which limited Primitivo's and Ines's employment options. However, each demonstrated by testifying in Spanish at the evidentiary hearing that their ability to speak Spanish has grown significantly since they left Mexico. Finally, Primitivo and Ines only speculate that the medicine for their daughter's respiratory condition is not available in Oaxaca City. Such speculation is not enough to overcome the evidence that members of Primitivo's and Ines's families have been able to establish lives there. For Primitivo and Ines to relocate to Oaxaca City to avoid possible persecution as Evangelical Christians in other parts of Mexico would be reasonable.[4]

Based on the foregoing, we cannot conclude that the record compels a finding that Primitivo and Ines are eligible for withholding of removal.

### III

The petition for review is denied.

_____

[4]Because we conclude Primitivo could reasonably relocate to avoid any future persecution in Mexico, we need not review the BIA's determination that Primitivo and Ines failed to prove the existence of a threat of future persecution there.